In re James SANTOS d/b/a James Electric Co., Inc., Debtor.

James SANTOS, Plaintiff,

v.

MAST CONSTRUCTION COMPANY, Defendant.

Bankruptcy No. 8000928.
AP No. 820184.

United States Bankruptcy Court,
D. Rhode Island.

Nov. 1, 1982.

Joseph Lamagna, Lamagna & Neary, Pawtucket, R.I., for plaintiff.

Peter Kennedy, Adler, Pollock & Sheehan, Providence, R.I., for defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEBTOR'S COMPLAINT TO ENJOIN DEFENDANT FROM PROCEEDING IN STATE COURT

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on July 29, 1982 on the Debtor's Complaint to enjoin proceedings brought by

Mast Construction Company (Mast) against James Santos in Rhode Island Superior Court, and the Debtor's prayer that Defendant Mast be held in contempt, that it be ordered to pay punitive damages, and that the Debtor be awarded reasonable attorney's fees. On July 29, 1982, after considering the written memoranda and oral arguments of the parties, the Court issued an order pursuant to 11 U.S.C. § 524(a) permanently enjoining Mast from proceeding in any court with respect to the matters alleged in its complaint filed in C.A. No. 81–4180, pending in the Superior Court, State of Rhode Island, Providence County. In the same order the Court denied the Debtor's prayers for punitive damages and counsel fees.

Because the order dated July 29, 1982 was entered promptly for the convenience of the parties, it was not accompanied by formal findings of fact and conclusions of law—for the purpose of completing the record on appeal, they appear below:[1]

### FINDINGS OF FACT

1. In January 1979, James Electric Co., Inc., entered into electrical subcontracts with Mast, the general contractor on two construction projects.

2. James Santos filed a Chapter 7 case with this Court on December 9, 1980, captioned "James Santos d/b/a James Electric Co., Inc.," wherein Mast was listed as an unsecured creditor on Schedule A–3 of the Debtor's[2] schedules. In the ordinary course, Santos received a discharge pursuant to 11 U.S.C. § 727 on February 26, 1981, and the bankruptcy case was closed on March 17, 1981.

3. On March 16, 1981 Walco Power Service, Inc., (Walco), an unsecured creditor also listed on the Debtor's Schedule A–3, filed suit against United Pacific Insurance Company (United Pacific), Mast's bonding company, alleging that it "had not been paid for labor supplied to [Santos] doing business as 'James Electric.'" Defendant's Pre-Trial Memorandum of Law at 2. On October 28, 1981, Walco obtained summary judgment in the Providence County Superior Court against United Pacific in the amount of $47,000. Mast's agreement with United Pacific obligates Mast to pay this sum to United Pacific. *Id.*

4. Thereafter, alleging that certain payroll affidavits of James Electric Co. were false and fraudulent, Mast brought an action against Santos in the Providence County Superior Court on November 10, 1981, claiming that Santos is indebted to Mast for all sums that Mast owes to its surety, United Pacific. Santos then brought this action in the Bankruptcy Court to stay the proceeding brought in the Providence County Superior Court.

### CONCLUSIONS OF LAW

Where, as here, the creditor alleges fraudulent conduct on the part of the debtor, the creditor must bring an action within one year after the discharge was granted. 11 U.S.C. § 727(e)(1).

This is not a mere statute of limitations, but an essential prerequisite to the proceeding. The year undoubtedly begins to run from the date of entry of the order of discharge, and not from the discovery of the fraud.

4 Collier on Bankruptcy ¶ 727.16 (15th ed. 1981).

The discharge was entered on February 26, 1981, and Mast failed to take any action, within one year after that date, seeking revocation of the discharge.

Mast argues, however, that it had no claim against Santos "prior to October 28,

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The Debtor is James Santos. In Defendant's [Mast's] Pre-Trial Memorandum of Law, counsel for Mast refers to the Plaintiff first as James Electric Co., Inc., and in the next sentence as the President of that corporation. (Pp. 1–2). Counsel's inattention or confusion as to the identity of the Debtor is manifest in his statement that even after receiving a copy of the Debtor's Schedule A–3, Mast "probably didn't even know who James Santos was." Defendant's Memorandum at 12. See pp. 3–4 *infra*.

1981, the date upon which ... Mast first learned of the summary judgment against United Pacific," and that therefore it was not affected by the Debtor's bankruptcy. Defendant's Pre-Trial Memorandum of Law at 5–6. This argument fails on the undisputed facts that the only contractual relationship between the Debtor and Mast arose in 1979, prior to the discharge, and that Mast was listed as a creditor on Schedule A–3 of the Debtor's schedules. The fact that the Providence County Superior Court subsequently granted summary judgment to Walco in its action against Mast's surety, United Pacific, does not create a new post-petition cause of action by Mast against the Debtor.

Any claims which Mast had against Santos were grounded in the 1979 contracts and the resulting business relationship between Mast and James Electric Co., Inc., at that time. Mast was listed as a creditor on the Debtor's schedules, failed to act to protect its claim in the manner and within the time prescribed by law, and is now barred from asserting those claims. Mast's assertion that there was "absolutely no way for Mast to have protected itself against this claim until October 28, 1981," Record at 12, is an unfortunate but incorrect assumption.

Mast argues that it had no "legal ... interest with James Santos," Record at 12, and thus had no legal interest in being named as a creditor in the Debtor's bankruptcy petition. Mast makes the ludicrous assertion that it had no reason to react to the bankruptcy filing because Mast "probably didn't even know who James Santos was," [3] Record at 12, notwithstanding the fact that the case caption is styled "James Santos, d/b/a James Electric Co., Inc." Furthermore, Mast had entered into contracts with James Electric Co., Inc., which were signed by James Santos as president of James Electric. Record at 4.

Because Mast alleges that Santos submitted false and fraudulent payroll affidavits, Mast could have sought a revocation of the discharge within one year after the discharge was granted, § 727(e)(1),[4] but also failed to do that, despite Walco's filing suit on March 16, 1981 against Mast's surety company. Walco's action was filed less than one month after entry of the discharge, and on the day before the Debtor's bankruptcy case was closed. The Debtor makes the important points—uncontradicted by Mast—that counsel for Mast and for its surety, United Pacific, are one and the same, and also that Mast participated by affidavit in the lawsuit between United Pacific and Walco. Debtor's Memorandum in Support of Motion for Injunction of State Court Proceedings and for Other Relief, at 3. Furthermore, Mast filed suit against Santos in Providence County Superior Court on November 10, 1981, still within the one-year limitation with respect to revocation of the discharge pursuant to § 727(e)(1).

All of the foregoing renders inescapable, as a matter of fact and law, that Mast was on notice of any claim it might have regarding alleged fraudulent conduct of the Debtor. Mast could have filed, and indeed was required to file any claims in connection with its 1979 contracts, in the Bankruptcy Court, within the periods prescribed by law.

Since this is a no asset case it is understandable that Mast would prefer not to participate in and thereby not be affected by this bankruptcy; however, Mast does not have that choice. Section 524(a) of the Bankruptcy Code makes clear that a discharge in bankruptcy both voids judgments

---

3. If Mast seriously wished to rely on the contention that it did not know who James Santos was when it received notice of the filing of the bankruptcy of "James Santos d/b/a James Electric Co., Inc.," then that very substantial factual burden should have been faced by Mast at a hearing. No hearing was requested on this issue, and no evidence was offered on the point. The mere assertion of that alleged fact, in argument only, is insufficient and is rejected.

4. In seeking revocation of the discharge within one year pursuant to § 727(e)(1), Mast would have had to establish that the "discharge was obtained through the fraud of the debtor, and [that] the requesting party did not know of such fraud until after the granting of such discharge...." § 727(d)(1).

and operates as an injunction against actions being commenced or prosecuted in other courts regarding the personal liability of the debtor.[5]

Since it is the Bankruptcy Court which is vested with the authority to determine the effect of a discharge which it has granted,[6] and since all claims which Mast had against the Debtor were discharged on February 26, 1981, this Court will exercise its authority pursuant to 11 U.S.C. § 524(a) to permanently restrain and enjoin Mast Construction Co. from proceeding in any court against the Debtor with respect to the matters alleged in its complaint filed in C.A. No. 81–4180, pending in the Providence County Superior Court.

---

5. "In essence, section 524(a) declares that any judgment rendered on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor. Second, and perhaps more importantly, it contains an injunction prohibiting creditors holding discharged debts from (1) commencing any action on such debt; (2) continuing any such action already instituted; and (3) employing any process to collect such debt, *e.g.,* through the use of garnishment or attachment writs."

Accordingly should a creditor institute suit in a state court post-discharge, and obtain therein a judgment against the debtor, such judgment is rendered null and void by section 524(a)." 3 Collier on Bankruptcy ¶ 524.01 (15th ed. 1981).

6. 3 Collier on Bankruptcy ¶ 524.01 (15th ed. 1981). *See also In re Thompson,* 416 F.Supp. 991, 995 (S.D.Tex.1976) (Congress broadened the discharge provisions in 1970 "to place all disputes pertaining to dischargeability within the exclusive jurisdiction of the bankruptcy court for complete and final resolution").