**In the Matter of Jerry E. GALLAGHER, Debtor.**

**Jerry E. GALLAGHER, Plaintiff,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, Defendant.**

**Adv. No. 84–0180–7.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 8, 1985.

Kenneth J. Doran, Smoler, Albert & Rostad, S.C., Madison, Wis., for plaintiff.

Robert J. Kasieta, Bell, Metzner & Gierhart, S.C., Madison, Wis., for defendant.

OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

Plaintiff, Jerry E. Gallagher, the debtor in a closed chapter 7 case venued in this

court, seeks to enjoin the defendant, St. Paul Fire & Marine Insurance Company, from enforcing a debt which Gallagher claims was discharged. The matter is presently before this court on the plaintiff's motion for summary judgment. The following facts are undisputed.

On May 6, 1975, a judgment (the "divorce judgment") in the amount of $14,000.00 plus 6% interest after September 3, 1974, was entered against the plaintiff in a divorce action styled *Christine B. Gallagher v. Jerry Gallagher*. The judgment was a property settlement. John Riley ("Riley") was the attorney for Christine Hogg ("Christine"), formerly Christine Gallagher, in the divorce action and subsequent proceedings.

Jerry Gallagher ("Jerry") filed his chapter 7 case on May 28, 1980. He had made no payments to Christine since the divorce judgment, and failed to list her as a creditor on his bankruptcy schedules. The bankruptcy court granted Jerry a discharge on September 12, 1980.

On December 23, 1980, Christine filed a claim against Riley for negligent representation during the divorce proceeding. Christine settled with Riley's insurance company, St. Paul Fire & Marine Insurance Company ("St. Paul"), for $25,000.00 on September 23, 1982.

On May 4, 1981 Christine sought relief from the divorce judgment in Dane County Circuit Court (the "relief proceeding"). Christine alleged that she and Jerry held property in Baskerville Park as joint tenants. Their interest in the Baskerville property was not disclosed during the divorce proceeding. Christine explained that she failed to disclose her joint interest at the divorce proceeding because she was under psychiatric treatment. A state court held, in an order for relief from and modification of judgment dated May 8, 1981, that Jerry had committed a fraud upon the divorce court by intentionally not disclosing his interest in the Baskerville property, and that therefore his interest was ordered to be transferred to Christine in partial compliance with the divorce judgment. The state court further ordered that a money judgment (the "fraud judgment") be entered against Jerry for the balance of the divorce obligation then unsatisfied by the transfer. The Baskerville property was transferred and Christine sold it during the summer of 1981.

On June 10, 1984 Christine executed an assignment of her interests in the divorce and relief proceedings to St. Paul. On July 5, 1984 St. Paul filed an action against Jerry in Dane County Circuit Court, seeking to execute on the fraud judgment. St. Paul asked for a money judgment against Jerry in the amount of $25,000.00 based on its settlement with Christine, and in the alternative a money judgment for the value of the Baskerville property. Jerry raised his bankruptcy discharge as a defense, commenced this adversary proceeding and obtained an injunction staying further proceedings in state court pending the outcome of this proceeding.

Jerry contends that the relief proceeding was solely a reworking of Christine's property settlement rights under the divorce judgment and therefore any attempts to enforce it are in violation of the injunction under 11 U.S.C. § 524. St. Paul argues 1.) Christine's claim against Jerry was not discharged because she did not have adequate notice to file her claim under section 523(a)(3)(A) or (B); 2.) the fraud judgment was a new and separate proceeding and not a reworking of the discharged divorce judgment; and 3.) Jerry waived the defense of discharge.

1. *Applicability of 11 U.S.C. § 523(a)(3)(A) or (B)*

Section 523(a)(3)(A) excepts certain debts from discharge,

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . .

(3) neither listed nor scheduled under section 521(1) ... with the name, if known to the debtor, of the creditor to

whom such debt is owed, in time to permit—

(A) ... timely filing of a proof of claim, *unless* such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2) ..., timely filing of a proof of claim and timely request for a determination of dischargeability of such debt ... unless such creditor had notice or actual knowledge of the case in time for such timely filing and request.

(emphasis added)

 Jerry did not list Christine on his list of creditors. However, the parties stipulate that Christine had actual knowledge of Jerry's bankruptcy. Under section 523(a)(3)(A) the issue becomes whether Christine had knowledge of Jerry's bankruptcy in time to file a proof of claim. *In Re Rayson*, 39 B.R. 597 (Bankr.C.D.Ca. 1984).

The creditors' meeting under section 341 in Jerry's bankruptcy case was scheduled for June 23, 1980. The notice of the meeting provided,

In order to have his claim allowed so that he may share in any distribution from the estate, a creditor must file a claim, whether or not he is included in the list of creditors filed by the debtor. Claims which are not filed within 6 months after the above date set for the meeting of creditors will not be allowed, except as otherwise provided by law.

This notice set the deadline for filing of claims at December 24, 1980.[1] If Christine had notice of Jerry's bankruptcy sufficiently prior to that date to allow her to file a claim, her claim is not subject to exception from discharge under section 523(a)(3).

During a hearing on August 15, 1984, St. Paul stipulated that Christine had actual notice of Jerry's bankruptcy on December 24, 1980. In Christine's malpractice complaint against Riley which she filed on December 23, 1980, however, Christine stated, "Jerry Gallagher, on November 13, 1980, was granted relief in accordance with Chapter 7 of Title 11 United States Code by the United States Bankruptcy Court for the Western District of Wisconsin...." It is virtually certain therefore that Christine had notice of Jerry's bankruptcy in time for her to request counsel to draw up that complaint and have it filed. Preparing a proof of claim in bankruptcy, and filing it would take no longer. Because Christine had actual notice of Jerry's bankruptcy on or before December 23, 1980, and caused a ·complaint containing that fact to be filed by that date she cannot be heard to claim that she lacked the knowledge upon which section 523(a)(3)(A) is conditioned.

St. Paul alleges alternatively that section 523(a)(3)(B) applies. If that section is to be applied, Christine must not have known of Jerry's bankruptcy in time to either file proof of her claim or request a determination of dischargeability of her debt. *In Re Pool*, 35 B.R. 748 (Bankr.D.Minn.1983). I cannot find as a matter of law that the time required to commence a proceeding to determine dischargeability is so significantly longer than that needed to file a proof of claim or to prepare and file a malpractice complaint as to alter the conclusion reached regarding section 523(a)(3)(A).

 Even if some notion of equity were invoked to make necessary a further consideration of section 523(a)(3)(B) St. Paul would not be able to prevail on this motion. Central to St. Paul's position is the contention that Christine could have stated a case

---

1. Counsel for both parties contend that December 23, 1980 was the last day for filing claims, but Bankruptcy Rule 9006(a) explains, "[i]n computing any period of time prescribed or allowed by these rules, by the local rules, by order of court, or by any applicable statute, the day of the act, event, or default from which designated period of time begins to run shall not be included."

Gallagher's section 341 notice extends the time provided by Bankruptcy Rule 3002(c) within which to file a claim. ("In a chapter 7 liquidation ... a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code....")

under section 523(a)(2)(B) based on facts underlying the state court's determination that Jerry acted fraudulently.

Section 523(a)(2)(B) states,

(a) A discharge under section 727 ... does not discharge an individual debtor from any debt—

....

(2) for obtaining money ... by—

....

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's ... financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money ... reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

The facts to be relied upon in considering this motion preclude a determination that a basis for St. Paul's contention could be demonstrated under even the most unlikely facts which might be proved, because there is a matter of law no way to show that a joint tenant can reasonably rely on the failure of his or her co-tenant to disclose his interest in the property. That failure to disclose may cause a court to misplace its reliance, but it can not be said to be a reasonable basis for the co-tenant to do so. Since all rights of St. Paul arise from the rights and interests of Christine in this case, it can assert no greater right than she.

In *In Re Bisbach*, 36 B.R. 350 (Bankr.W. D.Wis.1984) this court explained,

Once actual reliance is shown, the focus shifts to the reasonableness of the reliance. *In Re Hagedorn*, 25 B.R. 666 (Bkrtcy.S.D.Ohio 1982). *Hagedorn* suggests that where a representation is factually false an ordinary care standard determines the reasonableness of reliance in 11 U.S.C. § 523(a)(2)(A) cases involving false representations. The extent of the duty to exercise ordinary care depends upon the relative sophistication of the parties, the nature of the representations, and the ease of conducting an investigation.

36 B.R. at 353.[2] A joint tenant exercising ordinary care has notice of with whom they entered into joint tenancy. Christine owned a joint fee simple interest with Jerry in the Baskerville property since 1960, and executed three mortgages on the property with Jerry. She has not denied knowledge of her interest in either this or the state court relief proceedings. Her reliance upon Jerry's silence concerning his part ownership of the Baskerville property during the divorce proceeding cannot be deemed reasonable in the context of the standard employed under 11 U.S.C. § 523(a)(2).

The state court's finding of fraud does not estop the conclusion just stated. Collateral estoppel is inapplicable to the state court's finding of fraud for a number of reasons. The most obvious is that the state court's findings disclose neither sufficient facts to make the determination identifiably similar to one under section 523(a)(2) nor a sufficient articulation of the legal standard employed. The state court decided only that Jerry had committed a fraud upon the court for failing to disclose his interest in Baskerville Park, and that Christine had not. The state court specifically excused Christine from failing to disclose her own interest because she was under "great emotional strain" at the time of the divorce proceeding. Christine's complaint in the relief action argues only that she failed to disclose her interest, not that she forgot that she had a joint tenant interest. Thus, while no doubt correctly decided under whatever state law standard of fraud was being addressed, the characterization of an activity as fraud on the state court does not necessarily include a consideration of the standard of reliance which has been engrafted on section 523(a)(2) by case law of the federal courts. Additionally, this court and most other bankruptcy courts have previously held that neither *res*

---

**2.** This same standard is applicable to the reasonable reliance requirement of section 523(a)(2)(B). *NORTON BANKRUPTCY LAW AND PRACTICE,* at part 27—page 67 (1981).

*judicata* nor collateral estoppel is applicable to dischargeability questions. *In Re Brink*, 27 B.R. 377 (Bankr.W.D.Wis.1983) and cases cited therein.

Having held that on the undisputed facts Christine could not have reasonably relied upon Jerry's misrepresentation, it is unnecessary to apply the facts to the remaining elements of section 523(a)(2)(B). Since section 523(a)(2)(B) is inapplicable to the facts of this case, so too is section 523(a)(3)(B).

#### 2. *Nature of the 1981 relief proceeding*

■ 11 U.S.C. § 524 provides that a discharge in bankruptcy "... voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged ..." and "operates as an injunction against the commencement or continuation of an action ... to collect ... any such debt as a personal liability of the debtor...." St. Paul contends that the fraud judgment was a new and separate judgment, and not a continuation of the divorce action subject to the section 524 injunction. The order itself, however, negates this contention.

The order on which the fraud judgment was entered is entitled, "Order for Relief from and Modification of Judgment," and explains, "[t]he Defendant has failed to make any payment to the Plaintiff in satisfaction of the property settlement incorporated into the judgment of divorce previously entered in this action and that as of date, he owes the Plaintiff the sum of $14,000 in principal and $6,652.85 in accrued interest." The order further explained that the court "has jurisdiction pursuant to § 806.07 Stats. to reopen the judgment and set the judgment aside upon the finding of fraud upon the Court." It is clear that the state court judge ruled on the relief proceeding as a modification and reopening of the 1974 divorce judgment. Because the fraud judgment was a determination of the personal liability of Jerry with respect to the property division embodied in the divorce judgment, and be-

cause Jerry's liability under that portion of the divorce judgment was discharged during his bankruptcy case, the fraud judgment was obtained in violation of the injunction of section 524 and is therefore void.

#### 3. *Waiver of the discharge defense*

■ St. Paul argues that Jerry has waived the defense of discharge in bankruptcy because he did not raise it in the relief proceeding. St. Paul cites WIS. STAT. 802.02(3) which provides: "[i]n pleading to a preceding pleading, a party shall set forth affirmatively any matter constituting an avoidance or affirmative defense including but not limited to the following: ... discharge in bankruptcy...." St. Paul cites *Gustavson v. O'Brien*, 87 Wis.2d 193, 274 N.W.2d 627 (1979), in support of the argument that if an affirmative defense is not raised in a responsive pleading, it is waived. However that case dealt only with contributory negligence. *Collier on Bankruptcy* (15th ed. 1981) explains,

> In essence, section 524(a) declares that any judgment rendered on a discharged debt in any forum other than the bankruptcy court is null and void as it affects the personal liability of the debtor. Second, and perhaps more importantly, it contains an injunction prohibiting creditors holding discharged debts from (1) commencing any action on such debt; (2) continuing any such action already instituted; and (3) employing any process to collect such debt....

> Accordingly, should a creditor institute suit in a state court postdischarge, and obtain therein a judgment against the debtor, such judgment is rendered null and void by section 524(a). *The purpose of the provision is to make it absolutely unnecessary for the debtor to do anything at all in the state court action.* Thus, prior to the enactment of Section 14f and now section 524(a) of the Code, a debtor could not safely ignore an action commenced against him on a discharged

debt; as a result of the 1970 changes, his burdens are greatly reduced and the risk much less severe.

3 *Collier on Bankruptcy* ¶ 524.01 at 524–8 (15th ed. 1981) (emphasis added). *See In Re Santos,* 24 B.R. 688 (Bankr.D.R.I.1982); "[s]ection 524(a) of the Bankruptcy Code makes clear that a discharge in bankruptcy both voids judgments and operates as an injunction against actions being commenced or prosecuted in other courts regarding the personal liability of the debtor." 24 B.R. at 690–691 (footnote omitted). Because the judgment is itself void, there is no way that an action taken upon it may be said to require a prior articulation of the defense which causes it to be void. It therefore cannot be said that Jerry waived his defense of discharge, under section 524(a).

The unexecuted judgment obtained in the relief proceeding is void under section 524 to the extent it was based upon debts arising out of the 1974 divorce proceeding. St. Paul has violated the injunction of section 524 by its attempt to realize on the unexecuted judgment and by its attempt to collect the subrogated portion of the malpractice claim. Those violations are punishable by civil contempt citations. *In Re Marcott,* 30 B.R. 633 (Bankr.W.D.Wis. 1983). Civil contempt is not punitive, but restorative, and any ordered payment thereunder is limited to actual expenses incurred by Jerry in this action to enforce his bankruptcy discharge.

Upon the foregoing I conclude that there is no issue as to material facts. It is hereby

ORDERED, that summary judgment in favor of the plaintiff is granted, and it is further

ORDERED, that the contempt of St. Paul Fire & Marine Insurance Company may be purged by the payment to the plaintiff of costs and attorneys' fees proved within thirty days of the entry of a judgment upon this order.