**In re Dorothy DOTSON, Debtor.**

**Paul ROBERTS, Plaintiff,**

v.

**Dorothy Lee DOTSON, Defendant.**

Bankruptcy No. 85–04620–S–2.
Adv. No. 86–0465–S–2.

United States Bankruptcy Court,
W.D. Missouri, S.D.

Dec. 12, 1986.

David R. Munton, Bolivar, Mo., for plaintiff.

Ted Von Willer, Jr., Springfield, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

Paul D. Roberts (plaintiff) filed this adversary proceeding to declare the alleged debt of Dorothy Lee Dotson (defendant) to him to be nondischargeable under Section 523. Plaintiff's Complaint was filed on October 14, 1986. Debtor's petition was filed on December 23, 1985; her Section 341 meeting held on March 19, 1986, and the last date for filing complaints as to dischargeability was denominated as May 19, 1986. Debtor filed her Motion to Dismiss plaintiff's Complaint based on the untimely filing. The Court, prior to trial, overruled said Motion for the reason that plaintiff was not listed as a creditor on debtor's schedules and did not receive notice from the Court as to the date of the Section 341 meeting and the last date for filing. On that basis the adversary proceeded to trial.

Plaintiff and debtor were married in 1983 and divorced in March of 1984. Both had been married previously and had at least partial custody of children born to their other marriages. The state court made a determination of marital and non-marital property and awarded certain items to each party. Debtor continued to occupy the 20 acre farm and house thereon and to attend to plaintiff's children. Plaintiff visited from time to time when he was not on the road as a trucker. Plaintiff's testimony was that all of the marital and non-marital property awarded to both parties remained on the farm and in the house thereon. Sometime in the summer of 1985, plaintiff

remarried and set up a home in St. Louis, Missouri. This apparently led to a deterioration of the relationship (whatever it was) between plaintiff and debtor and matters came to a head in September of 1985.

It is at this point that the testimony of plaintiff and defendant (called as a witness by plaintiff) diverge. Plaintiff's version is that about September 14, 1985, he called debtor to complain of some social slight to the children and debtor told him she was leaving the premises. When he got there, on or about September 19, 1985, debtor was gone as well as most of the property awarded to him by the state court in the dissolution. Further, when he next visited the premises, approximately a week later, not only was debtor still absent, but all of the personal property belonging to him— marital, nonmarital, and post-marital—was missing even though he had secured part of the farm equipment with chains and locks. Finally, he complained that debtor had closed out a joint checking account belonging to both of them. Although not clearly delineated, plaintiff appeared to regard the loss to be either a conversion or embezzlement or a willful and malicious injury to his property.

Debtor, on the other hand, testified that plaintiff called her, told her to vacate the premises forthwith, and put the fear of God in her. She thereupon, with the help of a friend, packed up only her clothes and fled the premises. Debtor testified she took none of the property complained of and had no idea where it was, although she claimed plaintiff had been taking furniture and other chattels to St. Louis ever since the new nuptials. Debtor denied any knowledge of what happened to plaintiff's property. She did acknowledge she had closed the joint bank account into which she had been depositing her earnings. Debtor testified she did not list plaintiff as a creditor because she owed him nothing.

Debtor's counsel elicited one salient fact through cross examination of plaintiff, to-wit, that plaintiff had actual knowledge of debtor's bankruptcy. This was obtained through communication from the Trustee concerning the sale of the real estate which the state court had divided equally between the petitioner and respondent in the dissolution action. Plaintiff was unsure when he obtained the actual notice but it could have been in either February, March or April of 1986.

At the conclusion of plaintiff's case, debtor renewed her Motion to Dismiss. The Court grants same on two bases. The first is procedural, the second is substantive. Taking these in order the Court moves to the procedural question: Does actual knowledge of the bankruptcy prior to the date set for the filing of complaints to determine dischargeability require that any party file said complaint prior to the magic date even though said party was not listed as a creditor on the debtor's schedules?

For the purpose of this opinion, the Court ignores the underlying underbrush of whether an unlisted creditor's claim is discharged at all because since "the time from which the memory of man runneth not to the contrary", it has been clear that actual knowledge of the bankruptcy precluded such a creditor from recovery even though he was never listed, never given notice, and never received official word, 11 U.S.C. § 523(a)(3); *In re Stratton*, 29 B.R. 93 (Bankr.W.D.Ky.1983). Instead, the Court goes to the narrower question posed above.

This Court concludes that if a creditor has actual knowledge of a bankruptcy filing prior to the deadline for the filing for determination of dischargeability, then that creditor is bound by the deadline and his only potential avenue of attack is to show that the knowledge was procured so late that he could not reasonably file his complaint.

In the instant case, plaintiff's testimony, although imprecise, showed that he had actual knowledge not later than April 30, 1986. This meant he had at least 19 days to file his complaint or request an extension of time. Plaintiff did neither. Nineteen days is believed by this Court to be sufficient time for plaintiff to have acted

and plaintiff's failure to adopt either alternative until October 14, 1986, dooms plaintiff's complaint as being filed out of time. The Court has found somewhat similar cases which have concluded the same result. See *In the Matter of Gallagher*, 47 B.R. 92 (Bankr.W.D.Wis.1985) and cases cited therein.

Taking the second ground for ruling for the debtor, i.e., the substantive question, the Court concludes that plaintiff's evidence is insufficient to sustain a Section 523 complaint. Boiled down to its simplest format, plaintiff's evidence was:

1. The chattels and debtor were on the premises when last seen by plaintiff;

2. Debtor departed the premises;

3. The chattels departed the premises.

From there, plaintiff seeks the Court's finding that steps two and three above equate to debtor and the chattels departing hand in hand and debtor being responsible for the value of same, all without any evidence linking debtor to the disappearance. There was no evidence showing debtor removed the property. There was no evidence showing that debtor had or has the property. Without such evidence, the Court can only rule that plaintiff has failed to sustain the burden of proof and cannot prevail. Stated in the more modern vernacular, there was no "smoking gun" to link debtor to the missing chattels.

For the foregoing reasons, plaintiff's Complaint is DENIED. This opinion constitutes Findings of Fact and Conclusions of Law in accordance with Rule 7052, Rules of Bankruptcy.