**In re Joseph P. FORD, Debtor.**

**Bankruptcy No. 87–00095DAS.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 16, 1995.

Joseph P. Ford, Philadelphia, PA, Debtor pro se.

Edward J. Leonard, Philadelphia, PA, for Philadelphia Federal Credit Union.

Edward Sparkman, Standing Chapter 13 Trustee, Philadelphia, PA.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, PA.

### *OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

The instant matter requires us to decide whether this bankruptcy court may entertain, *de novo,* the issue of a creditor's right to a post-discharge setoff under 11 U.S.C. § 553, after that issue has already been decided adversely to the Debtor by a state court. We conclude that the state court properly exercised its jurisdiction, concurrent with that of this court, to decide this issue. As a result, we find that the state-court resolution of the issue is binding on this court. We therefore will deny the motion of the Debtor to hold the creditor in contempt of the discharge Order for invoking its right to setoff.

## B. FACTUAL AND PROCEDURAL HISTORY

The history of this dispute is lengthy. Its beginning stages were documented by this court over eight years ago in *In re Ford*, 78 B.R. 729, 730–32, 734–37 (Bankr.E.D.Pa. 1987) ("*Ford I*"). At that time, we traced its origin back over 15 years, to 1971, when a state-court domestic dispute between JOSEPH P. FORD ("the Debtor") and his ex-wife, Helen Ford ("Helen"), first surfaced. *Id.* at 731. Master's Reports unflattering to the Debtor emanated from a state-court divorce proceeding, leading to the granting of a contested divorce to Helen in 1979. *Id.*

Thereafter, Helen instituted an action against the Debtor, charging him with waste of the parties' marital property and seeking a partition of that property in the Philadelphia Court of Common Pleas ("the CCP"), in an action designated as February Term, 1982, No. 2399 ("the CCP Case"), commenced on February 17, 1982. On April 7, 1982, the Honorable Nicholas A. Cipriani, the judge presiding over the CCP Case ("J. Cipriani"), entered an Order in the CCP Case enjoining and restraining (1) the Debtor "from disposing of or assigning funds now in savings or investments;" and (2) the Philadelphia Federal Credit Union ("the PFCU"), with which the Debtor, as a City employee, had an account, from permitting the Debtor to make any further withdrawals from that account. *Id.* The Debtor not only unsuccessfully appealed that Order, but also, admittedly surreptitiously, withdrew a total of $2,389.39 from his PFCU account in small amounts to conceal detection of his actions. *Id.* at 732.

The PFCU discovered these withdrawals in 1986 and, recognizing its own culpable role in the frustration of J. Cipriani's Order, sent, under cover of a letter of May 19, 1986, a check for deposit to the CCP in the amount of $2,389.89 ("the Funds"), the same amount as that of the withdrawals from the Debtor's account. The PFCU also simultaneously charged back this same amount from the Debtor's account. *Id.*

The Debtor filed the underlying voluntary individual Chapter 13 bankruptcy case *pro se* on January 6, 1987. *Id.* at 730. Therein, he listed the PFCU as an unsecured creditor owed the amount of $5,364.32, which amount included the Funds. On June 12, 1987, the Debtor moved this court to order the Funds to be turned over to him, but this motion, vigorously defended by Helen's counsel (who also sought unsuccessfully to dismiss his case), was denied in *Ford I* on the ground that the Debtor had not offered to provide adequate protection to Helen's rights in the Funds, as required by 11 U.S.C. § 363(e) of the Bankruptcy Code. *Id.* at 735–37.

No further disputes relating to these matters arose in the course of this case. On May 29, 1991, after the Debtor completed the payments called for by his Chapter 13 plan, this court issued a discharge Order in his favor.

Shortly thereafter, the Debtor commenced the second round of disputes concerning the Funds. On June 19, 1991, he filed a petition in the CCP Case for release of the Funds to him from the CCP, believing them to still be deposited with that court. The Debtor apparently outlasted Helen in the contest over the Funds, because she did not answer his petition. Consequently, the CCP, on October 1, 1991, ordered the Funds to be turned over to the Debtor.

However, the Funds were not paid over to the Debtor. Rather, it was discovered, only after the Debtor filed, *inter alia*, a mandamus action against J. Cipriani in the Pennsylvania Supreme Court when the CCP claimed it could not comply with J. Cipriani's Order because the Funds were not in its possession, that the check sent from PFCU to the CCP had never been presented for payment, and the Funds remained in the hands of PFCU.

On October 13, 1993, the Debtor commenced the next phase of his pursuit of the Funds by filing a petition in the CCP Case to order the PFCU to release the Funds to him. On November 5, 1993, the CCP entered an Order giving the PFCU leave to petition this court "to open judgement [sic] discharging the debt" of the Debtor. However, nothing was filed in this court at that time. Thereafter, on March 10, 1994, the CCP proceeded to deny the Debtor's petition, explaining that it believed that the PFCU could apply the Funds as a setoff against the debt of the

Debtor to it discharged in this case, pursuant to 11 U.S.C. § 553.

The Debtor appealed this decision of the CCP to the Pennsylvania Superior Court ("the Super.Ct."). On April 28, 1995, the Super.Ct., at No. 01265, Philadelphia 1994, affirmed the CCP's decision, attaching thereto an unpublished Memorandum ("the Memo") which upheld the PFCU's right to assert a setoff. The Debtor testified before us that he has filed a petition for an allowance of a further appeal with the Pennsylvania Supreme Court ("the Pa.Sup.Ct."). However, the Pa.Sup.Ct. has not yet ruled upon same.

The Debtor then instituted the final phase of his pursuit of the Funds, i.e., the Motion in issue. He returned to this court, filing, on July 20, 1995, motions to, among other things, reopen his closed bankruptcy case, hold the PFCU in contempt of the 1991 discharge Order, and enjoin the PFCU from treating the Funds as an offset against his previously-discharged debt. At the initial hearing on these motions on August 8, 1995, the Debtor was ordered by this court to serve his motions on all creditors before they could be considered, and the hearing was continued to September 26, 1995. No creditors answered the motions and only the PFCU, by its counsel, appeared at the hearing.

This court granted the motion to reopen the case, and continued the hearing on the Debtor's substantive motion ("the Motion") to October 10, 1995, to allow the PFCU to file an Answer and for the Debtor to prepare for trial of the Motion. In its Answer, the PFCU requested a dismissal of the Debtor's requests for relief against it on the basis of the Super.Ct. decision, a copy of which was attached. Upon completion of the October 10, 1995, hearing, at which the Debtor alone testified, this court permitted the parties to file and serve briefs in support of their positions on October 10, 1995 (the Debtor), and November 6, 1995 (the PFCU). Although the Debtor pro se submitted a neatly-finished and generally well-done brief, including numerous citations, no submission was received from the PFCU despite promptings by our Courtroom Deputy and an unfulfilled promise to remit a submission no later than November 10, 1995. On November 14, 1995, counsel for the PFCU pleaded a previously-unreferenced illness and promised a remittance on November 17, 1995. This Opinion precedes any such submission.

## C. DISCUSSION

Despite the absence of a submission from the PFCU, our independent review of the pertinent authority convinces us that we are compelled to rule in its favor on the ground that the Super.Ct.'s judgment is final and cannot be overturned by this court, without our review of the merits of its decision regarding the application of § 553 to the facts in issue.

We agree with the Debtor that this court is generally an appropriate forum in which to review the post-discharge actions of a creditor to collect an allegedly-discharged debt in state court. See, e.g., In re Fernandez–Lopez, 37 B.R. 664, 669–70 (9th Cir. 1984); In re McNeil, 128 B.R. 603, 607 (Bankr.E.D.Pa.1991); and In re Gallagher, 47 B.R. 92, 97–98 (Bankr.W.D.Wis.1985). We would further state that the failure of a debtor to raise a bankruptcy discharge as an issue in a post-discharge state court action would not preclude a subsequent bankruptcy court challenge of a final state-court order which disregards the discharge injunction. See Fernandez–Lopez, supra, 37 B.R. at 669–70; and Gallagher, supra, 47 B.R. at 97–98. We would point out, however, that efforts to invoke bankruptcy jurisdiction after a case is closed, or even as to property of the estate of a pending case after stay relief as to that property has been granted, must be viewed, at some point, as improperly extending bankruptcy jurisdiction beyond its intended scope. See In re Anderson, 129 B.R. 44, 48–50 (Bankr.E.D.Pa.1991).

The instant facts do not present a situation where the impact of the bankruptcy discharge has been overlooked in a post-discharge state court proceeding due to the lack of sophistication of a pro se debtor, as in Fernandez–Lopez and Gallagher, or the lack of appreciation of the effect of a bankruptcy discharge by a state court. Nor do they

present a situation where, before the state court has acted on a post-discharge issue, the debtor has invoked bankruptcy court jurisdiction to halt the creditor's actions or obtain damages as a result of its alleged violation of the discharge injunction, as in *McNeil, supra*. Rather, here, we are presented with a bright and rather sophisticated (though not legally trained) *pro se* Debtor who has initiated and then litigated the issue of the extent of his discharge in the state courts, taking the matter to the highest state-court appellate tribunal, and then has returned to the bankruptcy court, only after the discharge issue, although fully litigated, has been lost in the state courts. In such circumstances, efforts of an unsuccessful debtor to forum-shop after the fact of an adverse decision are not appealing and cannot be allowed.

The resolution of certain legal issues which arise in the course of bankruptcy cases is confined to the bankruptcy courts. For example, "[r]elief from the [automatic] stay can be granted only by the bankruptcy court having jurisdiction over a debtor's case." *Constitution Bank v. Tubbs*, 68 F.3d 685 (3d Cir.1995). *Accord, Gibbs v. Housing Authority of City of New Haven*, 76 B.R. 257, 263 (D.Conn.1983); and *Labat v. Bank of Coweta*, 218 Ga.App. 187, 460 S.E.2d 831, 834 (1995). This rule of law is logical, because no other court should generally interfere with the bankruptcy estate while the bankruptcy case is pending in bankruptcy court and the automatic stay would otherwise remain fully applicable. However, once the stay is no longer in effect, and particularly after a bankruptcy case is closed, bankruptcy jurisdiction generally recedes. *See Anderson, supra*, 129 B.R. at 48–49.

The resolution of certain dischargeability issues is also confined to bankruptcy courts. For example, it is generally assumed that challenges of a debtor's discharge or the dischargeability of certain debts on the basis of fraud or other misconduct must be decided by bankruptcy courts under federal law. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 10, 111 S.Ct. 654, 658 n. 10, 112 L.Ed.2d 755 (1991); and *Brown v. Felsen*, 442 U.S. 127, 135–36, 99 S.Ct. 2205, 2211, 60 L.Ed.2d 767 (1979). One reason for the exclusivity of bankruptcy jurisdiction as to such matters is that the period in which such claims must be raised is short, and a proceeding challenging the debtor's discharge or dischargeability of a debt on such grounds must be instituted within the time when the bankruptcy case would normally remain open. However, even at that, state court determinations on issues relevant to such discharge and dischargeability issues collaterally estop debtors from contesting them. *Grogan, supra*, 498 U.S. at 284 n. 11, 111 S.Ct. at 658 n. 11.

On the other hand, state courts have been held to have concurrent jurisdiction with bankruptcy courts as to certain issues even though those issues must be decided under federal bankruptcy law. This is usually true of dischargeability issues which need not be raised within a short time-period, and hence may be the subject of dispute long after the bankruptcy case is closed and jurisdiction of the bankruptcy court over the affairs of the debtor has been relinquished. A prime example of this sort of dispute is whether a particular obligation of a debtor is a dischargeable indebtedness arising out of a divorce property settlement or is a nondischargeable alimony or support obligation under 11 U.S.C. § 523(a)(5). *See In re Gianakas*, 917 F.2d 759, 762 (3d Cir.1990) (citing, with apparent approval, *Buccino v. Buccino*, 397 Pa.Super. 241, 248, 580 A.2d 13, 16–17 (1990), where a state court held that it shared concurrent jurisdiction with a bankruptcy court to hear a § 523(a)(5) proceeding).

The weight of authority, as well as the logic that post-discharge matters should generally be decided in court of general jurisdiction rather than in specialized bankruptcy courts whose tenure of exclusive jurisdiction over the officers of a debtor is limited, supports the principle that nonbankruptcy courts, including state courts, should have concurrent jurisdiction, with bankruptcy courts, as to the issue of whether an invocation of § 553 by a creditor violates the bankruptcy discharge. Furthermore, even two of the cases cited by the Debtor in his brief expressly so hold. *In re Levy*, 87 B.R. 107, 109 (Bankr.N.D.Cal.1988) (state court has

concurrent jurisdiction on a § 524(a) matter); and *In re National Structures, Inc.*, 74 B.R. 986, 989 (Bankr.E.D.Wis.1987) (state court "had the authority to decide whether or not the setoff met the requirement of § 553").

Finally, the controlling decision of the Third Circuit Court of Appeals ("the Court of Appeals") in *Cooper–Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93 (3d Cir.1984), so held by clear implication. In that case a federal district court, not sitting as a bankruptcy court, decided that a creditor's claim of a setoff, pursuant to § 553, was barred by the bankruptcy discharge of the debtor. *Id.* at 94–95. On appeal, the creditor asserted, *inter alia,* that the district court lacked jurisdiction to decide the setoff issue and that it should have referred that issue to the bankruptcy court. *Id.* at 95. The Court of Appeals disagreed, holding that the propriety of the setoff in issue was "intertwined" with issues properly before the district court, rendering the district court, as well as the bankruptcy court, an appropriate forum to decide the setoff issue. *Id.* at 96.

Thus, *Cooper–Jarrett* supported the conclusion that the district court, not sitting as a bankruptcy court, shared concurrent jurisdiction with the bankruptcy court to determine the validity of a creditor's post-discharge claim of a setoff. Other cases in which federal district courts, though not sitting in bankruptcy, proceeded to decide post-discharge, setoff-related issues include *Friedlander v. Doherty,* 851 F.Supp. 515, 517–19 (N.D.N.Y. 1994); and *L.F. Rothschild & Co. v. Angier,* 84 B.R. 274 (D.Mass.1988).

The Debtor cites one case, *In re Marriage of Williams,* 157 Cal.App.3d 1215, 203 Cal. Rptr. 909, 912–15 (1984), which holds that a determination of an issue of whether a bankruptcy discharge supersedes a claim of a setoff should be exclusively within the jurisdiction of a bankruptcy court. We note that *Williams* is a California state court decision which this court is in no sense obliged to follow. In fact, this court is required to follow the holding of *Cooper–Jarrett, supra,* to the contrary. *See In re Taras,* 136 B.R. 941, 948 (Bankr.E.D.Pa.1992) ("Principles of *stare decisis* command this court to follow the law of the circuit, as set forth by the [Court of Appeals], unless and until the Supreme Court [of the United States] directs to the contrary."). *Accord, In re Bernhardt,* 186 B.R. 889, 890 (Bankr.E.D.Pa.1995). To the extent that we would be obliged to follow state law in this area, we would be required to follow the dictates of the Pa.Sup.Ct. and to accord "considerable weight" to decisions of Pennsylvania's intermediate appellate courts, such as the Super.Ct. *See Sprague, Levinson & Thall v. Advest, Inc.,* 623 F.Supp. 11, 14 (E.D.Pa.), *aff'd,* 780 F.2d 1016 (3d Cir. 1985). We are therefore obliged to give considerable weight to the decision of the Super.Ct. in the appeal of the CCP Case in issue in which that court *did* exercise concurrent jurisdiction over the issue of whether a post-discharge setoff could be validly asserted against the Debtor.

■ Since we conclude that the CCP and the Super.Ct., in affirming the CCP's decision, properly exercised their concurrent jurisdiction over the matter in dispute, we find that this court is bound by the disposition in the CCP Case, assuming that it is a final decision and was not secured by fraud. *See In re Kovalchick,* 175 B.R. 863, 872 (Bankr. E.D.Pa.1994), and cases cited therein. There is no allegation by the Debtor that the result in the CCP Case was procured through any sort of fraud. As to finality, the posture of the CCP Case is precisely the same as the matter at issue in *Kovalchick.* The Super.Ct. has affirmed a lower court decision adverse to the Debtor, and a petition of the Debtor requesting permission to proceed with the matter before the Pa.Sup.Ct. is pending. *Compare id.* at 868. In *Kovalchick,* holding that the pendency of a petition for an appeal to the Pa.Sup.Ct., the acceptance of which are sparingly exercised and are solely in the discretion of that court, is a

> mere *request* for further appellate review ... [which] would not prevent a lower court's decision ... from becoming final for res judicata and collateral estoppel purposes. *Cf.* [*In re*] *Pennsylvania Truck Lines,* [*Inc.,* 1994 WL 247348,] ... slip op. at *1 [ (Bankr.E.D.Pa. June 1, 1994) ] (pendency of post-trial motions does not affect the finality of a judgment, citing RE-

STATEMENT (SECOND) OF JUDG-MENTS, § 13, comm. f, at 135 (1983)).

Our decision that this court is bound to honor the state court's disposition that the Debtor is precluded from recovering the funds in issue by application of res judicata and collateral estoppel is also consistent with our unwillingness to "review state court ... determinations as some sort of super-appellate court," which we expressed in *Ford I*, 78 B.R. at 734. The Debtor has displayed tenacity, scholarship, and adherence to established time-schedules which should serve as an example to the PFCU. However, this court must be involved in deciding issues before us correctly, not grading the quality of the advocates.

We find that a common strain underlying the Motion before us and that in *Ford I* is the Debtor's wish to have this court overrule state-court decisions with which he is dissatisfied. As we explained in *Ford I*, at *id.*, we cannot and will not do so. Generally, a litigant must be prepared to accept the final decision of the court system in which litigation first takes place. It is unfair to opposing litigants, contrary to the principle of mutual respect among courts, and breeds unreasonable burdens for the various court systems to allow parties to repeat litigation in different courts. We must discourage such efforts.

Thus, we have held that a debtor generally may not, after actively participating in the post-confirmation litigation of an issue in state court proceeding, relitigate that issue in bankruptcy court. *See In re Dusty Rhoads Guns & Sporting Goods, Inc.*, 1993 WL 379537, at *1 (Bankr.E.D.Pa. Sept. 21, 1993). In *Rhoads*, a Chapter 11 debtor actively participated in post-confirmation state court proceedings concerning his rights as a tenant, and then attempted to relitigate the matter in the bankruptcy court when the state court results were not to his liking. *Id.* This court held that "such forum-shopping

cannot be tolerated." *Id.* Cf. *In re Siegel*, 1992 WL 6852 (Bankr.E.D.Pa. Jan. 14, 1992), *aff'd*, C.A. No. 92–1093 (E.D.Pa. June 28, 1992) (bankruptcy court refused to intervene in the midst of post-confirmation state-court litigation between the debtor and her former law firm).

In light of our decision that we must defer to the conclusion reached by the Super.Ct. in the CCP Case and deny the instant motion for that reason, it would be inappropriate for us to address the underlying merits of the propriety of the PFCU's invocation of its setoff rights, by way of § 553. We do note that the Super.Ct., in the Memo, does not appear to analyze the difficult issue of whether the Debtor's claim against PFCU is in fact a pre-petition claim. As is stated at 4 COLLIER ON BANKRUPTCY, ¶ 553.08, at 553–48 (15 ed. 1995), "[i]t is unclear whether claims arising from prepetition obligations, but not in existence until after the bankruptcy case was commenced, may be offset." Compare *Cooper–Jarrett, supra*, 726 F.2d at 96–97 (claim arising from a post-petition settlement of a pre-petition contract and transaction cannot be offset), *with United States through Agricultural Stabilization & Conservation Service v. Gerth*, 991 F.2d 1428, 1433–34 (8th Cir.1993); and *In re Corland Corp.*, 967 F.2d 1069, 1078 (5th Cir.1992) (both holding that dependency on a postpetition event to give rise to a claim based on a pre-petition obligation is a pre-petition claim subject to setoff).

Analysis of the instant obligation of the PFCU to the Debtor is certainly not easy. It could be argued that whatever obligation the PFCU had to the Debtor arose in 1986, pre-petition, when the CCP failed to deposit the Funds remitted to it by the PFCU. On the other hand, it could be argued that no claim of the Debtor against the PFCU arose until the Debtor obtained the right to recover the Funds vis-a-vis Helen, post-petition, on October 1, 1991.[1]

---

1. It might be assumed that the presence of *In re M. Frenville Co.*, 744 F.2d 332, 337 (3d Cir.1984), *cert. denied sub nom. M. Frenville Co. v. Avellino & Bienes*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), holding that a claim arises at the time of a right to payment for an act instead of at the time of the commission of the

act, would result in a tendency for courts in this Circuit to characterize claims as post-petition instead of pre-petition. However, the *Frenville* result is based upon the court's finding that, under New York law applicable to that dispute, no contribution claim arose until the primary obligor became liable. On the other hand, Penn-

The underlying equities in favor of the Debtor are not strong. The Funds were deposited into the CCP, for the benefit of Helen, because the Debtor attempted to circumvent J. Cipriani's Order of April 7, 1982. It appears that the Order of October 1, 1991, resulted not from the strength of the Debtor's position, but by the default of Helen, who probably considered avoidance of the Debtor worth the loss of her rights to the Funds.[2]

We certainly believe that the issue of the propriety of the PFCU's invocation of setoff to avoid liability for the payment of the Funds to the Debtor was a close question. However, the Super.Ct. and the CCP Court have resolved this difficult issue in favor of the PFCU. We do not believe that it would be appropriate for this court, in any sense, to review the matter further, and therefore the Debtor's Motion before us must be denied.

### D. CONCLUSION

An Order consistent with this Opinion, denying the Motion and providing for reclosing of this case, will be entered.

### ORDER

AND NOW, this 16th day of November, 1995, after a hearing of October 10, 1995, on the Motion of the Debtor to hold the Philadelphia Federal Credit Union in contempt of his discharge injunction ("the Motion"), upon consideration of the Brief submitted by the Debtor, it is hereby ORDERED AND DECREED as follows:

1. The Motion is DENIED.

2. This case shall be RECLOSED if the time for appealing this Order expires without the filing of an appeal.

---

sylvania state law pertinent to setoff appears to establish that such rights accrue when they are created, even when these rights do not mature until later. *See Northwestern Nat'l Bk. v. Commonwealth*, 345 Pa. 192, 201–03, 27 A.2d 20, 25 (1942).

**2.** In addition, the Funds, if recovered, would appear to be property of the Debtor's estate. *See* 11 U.S.C. §§ 541(a)(1), (a)(7). Since the Debtor did not list the Funds as an asset, nor seek to exempt same, in his Schedules, it appears that the Funds, if recovered from the PFCU, would have been payable to the Standing Chapter 13 Trustee, not, as the Debtor apparently supposes, to himself.