**CREATIVE DATA FORMS, INC.**

v.

**PENNSYLVANIA MINORITY
BUSINESS DEVELOPMENT
AUTHORITY.**

Civ. A. No. 84–6162.

United States District Court,
E.D. Pennsylvania.

July 29, 1985.

J. Scott Victor, Philadelphia, Pa., for plaintiff.

Paul J. Winterhalter, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

This bankruptcy appeal was filed by Creative Data Forms, Inc. (Creative), the debtor-in-possession and plaintiff in the above captioned adversary proceeding. Creative seeks to overturn an October 26, 1984 order of the bankruptcy court which denied Creative's motion for reconsideration of the bankruptcy court's order of July 31, 1984. This latter order denied Creative's request for the turnover of certain funds pursuant to § 542 of the Bankruptcy Code. For the reasons discussed below, I will affirm.

### I.

The material facts of this case, which are not in dispute, were set forth in *In re Creative Data Forms, Inc.*, 41 B.R. 334 (Bankr.E.D.Pa.1984). I adopt them below pursuant to Rule 8013 of the Rules of Bankruptcy Procedure.

The Pennsylvania Minority Business Development Authority (PMBDA) is a state instrumentality providing financial and other assistance to eligible minority businesses in the Commonwealth of Pennsylvania. The debtor, Creative Data Forms, Inc., is a minority business engaged in the commercial printing brokerage business. In July, 1983, Creative applied to PMBDA for a business loan. PMBDA agreed to provide Creative with up to $100,000 in financing contingent on the use of the funds in a manner prescribed by PMBDA.

On February 6, 1984, the parties executed formal loan documents including (1) a loan agreement signed by PMBDA and Crawford A. Wilson, Jr., President of Creative, on behalf of Creative and individually;

and (2) an escrow agreement signed by Mr. Wilson individually and on behalf of Creative, and by Girard Bank and PMBDA. A check in the amount of $100,000 was issued to the order of Creative Data Forms, Inc., and Crawford A. Wilson, Jr.

Pursuant to the terms of the loan agreement, Creative and Mr. Wilson were required to deposit the funds in an escrow account at Girard Bank, with the bank acting as escrow agent. The loan agreement sets forth the purpose of the loan and the conditions under which the funds would be released on an intermittent basis to Creative from the escrow account:

> Borrower agrees that the Loan shall be used solely to provide financing for the project described in Schedule A hereto ("Project"), and the proceeds shall be used in accordance with the proposal set forth in Schedule A. The loan shall be disbursed through an escrow account to be established with Girard Bank and moneys therefrom shall be released only upon presentation of certificates, invoices, or other evidence of proper expenditure satisfactory to the PMBDA. The allocation of proceeds shall not be altered without prior written approval of the lender.[1]

The allocation of the loan proceeds to Creative was described in Schedule A of the loan agreement as follows:

| | |
|---|---|
| Land and Building | $ – 0 – |
| Leasehold Improvement | 13,350 |
| Equipment—Machinery | 36,650 |
| Vehicle | 35,000 |
| Working Capital | 35,000 |
| Total | $100,000 |

By the terms of the escrow agreement, the Bank was precluded from disbursing any funds to Creative without prior approval from PMBDA. PMBDA was to maintain control over the funds at all times and had the right to halt payments, prohibit withdrawals, or have the entire balance in the account returned to it at any time. The pertinent language in the escrow agreement reads as follows:

---

1. Loan Agreement, paragraph 2.

Borrower agrees that the proceeds of this loan from the Authority shall be deposited with Bank, in escrow, under the terms and conditions provided herein ... Bank shall obtain the written consent of the Pennsylvania Minority Business Development Authority prior to disbursement of any amounts from the escrow account and shall disburse the balance therein in accordance with the instructions of the Authority ... Bank agrees that the Executive Director of the Authority may, at any time and in his sole discretion, direct and authorize the Bank to prohibit withdrawals, stop payment or take such other action, including the return of the balance in the account to the Authority, as the Executive Director of the Authority shall deem appropriate to protect or safeguard any and all funds of the Authority held by the Bank pursuant to this Agreement.[2]

The repayment schedule under the loan agreement required Creative to pay the sum of $437.50 to PMBDA for six (6) consecutive months, commencing on April, 1984, and due the first day of each month thereafter, and the sum of $1,115.94 to PMBDA in 114 consecutive monthly installments, commencing on October 1, 1984, and due on the first day of each month thereafter. Creative failed to remit the first two payments (April and May, 1984) due under the repayment schedule, and as such was in default pursuant to the terms of the loan agreement.[3]

Between February 8, 1984, and May 9, 1984, funds totalling $46,534.76 were disbursed to Creative from the escrow account, leaving an account balance of $54,454.13. On May 10, 1984, Creative filed a petition under Chapter 11 of the Bankruptcy Code. Shortly thereafter, Creative requested that the entire balance in the escrow account be released to it for working capital. When PMBDA refused to grant the Bank authority to release the funds, Creative filed a complaint for turnover, claiming that the funds are property of the estate and must be turned over for use as working capital.

Judge William King of the Bankruptcy Court rejected Creative's turnover request in an order and opinion dated July 31, 1984. Judge King held that the funds were not property of the estate, reasoning that title to the escrow account funds did not pass to Creative prior to the time bankruptcy was filed because Creative had not performed in the manner required to receive the funds and PMBDA had not consented to release them. *In re Creative Data Forms, Inc.,* 41 B.R. 334, 337 (Bankr.E.D.Pa.1984). Creative responded to this adverse ruling by filing a motion for reconsideration and rehearing on August 9, 1984. Judge King denied the motion by order without opinion on October 26, 1984. (App. Index No. 13). This appeal by Creative followed.

## II.

■ Before considering the merits of Creative's appeal, I will address the jurisdictional defense proffered by PMBDA. PMBDA notes that Creative did not file its motion for reconsideration pursuant to Bankruptcy Rule 9023 ("New Trials; Amendment of Judgments"). Rather, Creative proceeded under Bankruptcy Rule 9024 ("Relief from Judgment or Order"). The crux of PMBDA's jurisdictional argument is that Bankruptcy Rule 9023 applies F.R.Civ.P. 59, while Bankruptcy Rule 9024 applies F.R.Civ.P. 60. Bankruptcy Rule 9023 and F.R.Civ.P. 59 stay the effectiveness of the entered judgment pending reconsideration, and toll the period in which notice of appeal need be filed. Reconsideration sought pursuant to Bankruptcy Rule 9024 or F.R.Civ.P. 60, however, does not affect the finality of the judgment nor does it toll the time period in which to file a notice of appeal. PMBDA cites 7 *Moore's Federal Practice,* para. 60–29, at 60–327 (2d ed. 1981) for the difference between the two federal rules. The pertinent language from this treatise states:

> A timely motion under ... Rule 59(e) destroys the finality of a judgment for

---

**2.** Escrow Agreement, paragraphs 1, 4, 9.

**3.** See Loan Agreement, paragraph 6A.

purposes of appeal, and the full time for appeal commences to run anew from the entry of an order disposing of the motion and restoring finality. To be timely the motion must be made ... within 10 days after entry of judgment. A motion for relief under Rule 60(b) is quite different ... A motion for relief on one or more of the six grounds stated in 60(b) for relief from a final judgment does not affect the finality of the judgment, and does not toll the time for appeal from the final judgment. An appeal from a denial of the 60(b) motion brings up for review only the correctness of that order, and does not bring up for review the final judgment.

PMBDA admits that Creative filed its motion for reconsideration within ten days of Judge King's order of July 31, 1984. It further admits that Creative filed a timely notice of appeal to this Court following Judge King's denial of its motion for reconsideration. Despite the timeliness of Creative's actions, however, PMBDA asserts that Creative's use of Bankruptcy Rule 9024/F.R.Civ.P. 60, coupled with its failure to file a notice of appeal within 10 days, renders this Court unable to review any issue on the merits. The sole question to be considered, claims PMBDA, is whether the bankruptcy court abused its discretion by not granting reconsideration of its July 31, 1984 order.[4]

I cannot agree with PMBDA's assessment of this Court's jurisdiction. Initially, I note that Creative's motion, although designated as being pursuant "to Bankruptcy Rule 9024," requested "a *reconsideration* and reargument of all issues previously raised in Creative's complaint ..." (emphasis added). A motion for reconsideration is essentially a motion for a new trial under Rule 9023. Bankruptcy Rule 9024, on the other hand, allows relief under certain circumstances from final judgments or orders. *See In re Rice*, 42 B.R. 838, 840 n. 1 (Bankr.D.S.D.1984). Thus, while Creative may have printed "Bankruptcy Rule 9024" on its motion, the relief sought was much

more akin to a Bankruptcy Rule 9023 motion and strongly indicates that this latter type of proceeding was intended. This sort of intent evidence is particularly germane here, as it is well established that bankruptcy proceedings are inherently proceedings in equity. Accordingly, I am loathe to rely on an overly fine, technical reading of the Bankruptcy Rules and Federal Rules of Civil Procedure to destroy Creative's right to appeal.

I also note that Moore, in discussing the difference between F.R.Civ.P. 59 and 60, states: "Nomenclature, however, should not be controlling. A motion labelled under Rule 60(b) may be considered under Rule 59 if timely thereunder ..." 7 *Moore's Federal Practice*, para. 60–29, n. 1 at 60–327 (2d ed. 1981). Similarly, I see no reason why a motion improperly designated as being pursuant to Bankruptcy Rule 9024 may not be considered under Bankruptcy Rule 9023. This is especially so when, as in the present case, the motion appears to have been intended as a Rule 9023 motion, was timely filed, and the proceeding assumes an equity posture.

For the foregoing reasons, then, I will interpret Creative's motion for reconsideration as one filed under Bankruptcy Rule 9023. I will now proceed to examine the merits of Creative's appeal.

### III.

Creative raises three issues on its appeal to this Court. First, Creative contends that the bankruptcy court erred in determining that the funds on deposit in the Girard Bank account were not property of the debtor's estate pursuant to § 541(c) of the Bankruptcy Code. Second, Creative submits that the bankruptcy court erroneously applied general escrow law in determining its right to possession of the funds pursuant to the loan agreement between Creative and PMBDA. Lastly, Creative asserts that the bankruptcy court erred in not determining that the funds on deposit at Gir-

---

**4.** Given my disposition on the merits, the distinction is not of any practical importance; however, because the issue raised by PMBDA goes to my jurisdiction, I believe it should be addressed fully.

ard Bank were property of the estate pursuant to § 544(a) of the Bankruptcy Code in view of the fact that there was no proof by PMBDA that it had perfected its claimed security interest in the Girard Bank account. (See App. Index No. 2, Statement of Issues on Appeal).

■ Section 541(a)(1) of the Bankruptcy Code defines the "estate" as "comprised of all of the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case."[5] Creative admits that at the commencement of bankruptcy proceedings the funds were not payable on demand, inasmuch as the escrow agreement contained restrictions on withdrawals of the funds. Creative nevertheless contends that it had both a legal and an equitable interest in the funds on deposit at Girard Bank, and as such the funds are property of the estate pursuant to § 541(a)(1). Creative points to the following factors in support of its possession claim: (1) the $100,000 check from PMBDA was drawn in the debtor's name; (2) the $100,000 check was delivered from PMBDA to Crawford A. Wilson, Jr., the principal of the debtor at the time of its deposit; (3) the funds were deposited in the debtor's own account at Girard Bank[6]; (4) the repayment schedule is based on the entire $100,000 loan proceeds; and (5) PMBDA charged interest on the entire $100,000 from the date of delivery.

■ I do find some merit in Creative's possession claims, particularly in light of the factors outlined above. Clearly, PMBDA could have better structured the transaction and avoided this type of litigation. The fact remains, however, that the funds on deposit at Girard Bank were subject to an escrow agreement. Section 541(a) is not intended to expand a debtor's rights against others beyond the bounds in existence at the commencement of the case. The debtor-in-possession, acting as trustee

in a Chapter 11 case, can assert no greater rights than the debtor himself had on the date the case was begun. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; L. King, 4 *Collier on Bankruptcy,* section 541.06 (15th ed. 1979). Here, as aptly stated by Judge King, those rights do not include the right to immediate use of the funds unless PMBDA consents. It is undisputed that Creative at no time enjoyed an automatic right to use or withdraw the escrow account funds. The bank, acting as escrow agent, could not disburse any funds without prior approval from PMBDA. I am not inclined to defeat an arms-length agreement between the parties and expand Creative's rights by granting it funds it did not have a right to possess pre-petition.[7]

I am not unmindful of the fact that Congress contemplated a broad scope for § 541(a)(1). *See U.S. v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). I do not believe, however, that "property of the estate" was meant to encompass situations such as the one at bar. The instant case is not one in which property of the debtor is seized by a secured creditor prior to bankruptcy, and subsequently must be turned over to the trustee/debtor-in-possession pursuant to § 542(a) and § 363(b) and (c). In that kind of scenario, the debtor originally possessed the property and, more importantly, maintained certain rights (i.e. redemption) in the property once it was seized. This right of redemption meets the § 541(a)(1) test of a "legal or equitable interest in property as of the commencement of the case." In the case before me, however, Creative never had possession of the funds, nor could Creative exercise any legal or equitable rights that would automatically grant it possession.

---

**5.** The 1984 amendment to § 541 is not applicable to the case at bar.

**6.** This account appears to have been opened with the $100,000 deposit. See App. Index No. 7, plaintiff's trial exhibit No. 2.

**7.** It might also be argued that if Creative was truly in possession of the funds it would have withdrawn them prior to bankruptcy. This Creative clearly could not do.

Lastly, I cannot agree with Creative's assertion that the funds are property of the estate pursuant to § 541(c)(1). This section provides that "... an interest of the debtor in property becomes property of the estate under subsection (a)(1) ... of this section notwithstanding any provision —(A) that restricts or conditions transfer of such interest by the debtor ..." In other words, § 541(c)(1) is a vehicle whereby certain property that would otherwise meet the § 541(a)(1) property of the estate test may be included in the estate. *See* L. King, 4 *Collier on Bankruptcy*, Section 541.22 (15th ed. 1979). Creative recognizes this relationship between subsections (a)(1) and (c)(1) of § 541 when it states: "§ 541(c)(1) ... provides generally that restriction on the transfer of the debtor's property will be inoperative to prevent inclusion of the property [in] the estate." (Brief of Appellant at 5). I have already concluded that the escrow account funds are not the debtor's property, and would not otherwise be included as property of the estate under § 541(a)(1). Section 541(c)(1) is not applicable to the facts at bar, and cannot be invoked to cloak the funds with "property of the estate" status.

In sum, then, this case presents a close question as to whether the remaining funds on deposit at Girard Bank constitute property of the estate pursuant to § 541(a)(1). I am ultimately unpersuaded by Creative's claim that it had a right to possess the escrow account funds, and conclude that the funds are not property of the estate within the meaning of § 541(a)(1).[8] Finally, I reject the other two issues raised by Creative as they are both premised on the erroneous assumption that Creative had possession of the funds.

**8.** Assuming arguendo that the funds were initially property of the estate, they very well may have lost that status prior to Creative's filing. As noted earlier, Creative's failure to make its first two loan repayments constituted a default under the loan agreement. PMBDA contends that this default automatically terminated the agreement pursuant to the terms of the last section of paragraph 6 of the loan agreement. A termination of the contract before the commencement of bankruptcy proceedings would, of course, divest the remaining funds of their hypothetical "property of the estate" status. I need not resolve this issue given my conclusions above.