**In re Joseph P. FORD, Debtor.**

**Bankruptcy No. 87–00095S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Oct. 8, 1987.

Joseph P. Ford, debtor.

Michael S. Bomstein, Philadelphia, Pa., for movants.

Howland W. Abramson, Deputy Legal Counsel, to the Court Administrator, Phila., Pa., for the Honorable Nicholas A. Cipriani.

Edward Sparkman, Philadelphia, Pa., Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

## A. INTRODUCTION

We herein consider a Motion by the ex-wife of the Debtor and her counsel to dismiss the Debtor's Chapter 13 bankruptcy case, basically on the grounds of his purported lack of "good faith," and a Motion by the Debtor to compel a state family court judge (or more properly, the family court) to turn over to him certain funds held by the Court in connection with a partition action brought against him by the ex-wife. The domestic relations setting of the underlying dispute adds a rather unique element to this matter, but, ultimately, close examination of the application of the Code in other analogous settings convinces us that both Motions must be denied, except for our reaffirming a previous Order that the Debtor must remain current on his payments to the Trustee to avert dismissal of his case.

## B. PROCEDURAL HISTORY

The Debtor, JOSEPH P. FORD, filed the instant bankruptcy case *pro se* on January 6, 1987. The instant case was preceded by an earlier Chapter 13 case, Bankruptcy No. 86–02218K, filed by the Debtor in which he *was* represented by counsel. In the initial case, having been confronted with a Motion to Dismiss filed by his ex-wife, HELEN FORD (referred to hereinafter as "the Wife"), and her counsel in the divorce proceedings, the law firm of PINNOLA & BOMSTEIN (hereinafter referred to as "P & B") (collectively the Wife and P & B shall be referred to as "the Movants"), on the ground that he had failed to make any payments to the Trustee, the Debtor obtained an Order voluntarily dismissing his initial case on December 29, 1986. The present case was then filed eight days later.

On May 13, 1987, the Movants sought relief from the automatic stay to resume the property-distribution proceedings between the Debtor and the Wife in state court. This Motion was based upon the Debtor's purported lack of "good faith" in

filing his petition, his failure to make payments in the new case, and "the nature of the action in the state court." When the Movants failed to present any evidence at the hearing on the Motion on June 9, 1987, to support relief pursuant to 11 U.S.C. § 362(d), we denied the Motion without prejudice to the Movants to seek to dismiss the case or reassert a claim for relief from the automatic stay on a fuller record, on the basis of our decision in *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005 (Bankr.E.D.Pa.1987), *appeal dismissed*, C.A. No. 87–2364 (E.D.Pa. June 25, 1987).

On June 12, 1987, the Debtor filed the turnover Motion before us. On June 23, 1987, the Movants countered with the instant Motion to dismiss. The initial hearing on the turnover Motion was continued to the date of the hearing on the dismissal Motion, July 30, 1987. On that date, the Debtor; Michael S. Bomstein, Esquire, presumably a partner of P & B; and counsel for The Honorable Nicholas A. Cipriani, the state family court judge, who had answered and opposed the turnover Motion, appeared.

At that time, we indicated a desire to consider the dismissal Motion first, as its favorable disposition could render the turnover Motion moot. Mr. Bomstein himself testified and also called the Debtor as his witness. At the close of the hearing, we indicated our intention to enter our Order dated August 4, 1987, denying the Motion in part, but conditioning further proceedings upon the Debtor's remittance of $480.00 monthly to the Trustee on or before August 17, 1987, and the 15th of each month through December, 1987, after which post-petition arrearages to the Trustee would be liquidated, and continued remittance of Plan payments of $320.00 monthly thereafter. A hearing to determine the Debtor's compliance with this Order and, if· he complied, to hear his turnover Motion, was scheduled on August 19, 1987.

As it developed, the Debtor did remit the August, 1987, payment of $480.00. We therefore conducted a hearing on the Debtor's turnover Motion. At its close, we allowed the parties until September 25, 1987, to file opening Briefs discussing both Motions and until October 5, 1987, to file Reply Briefs. The Movants stood on Memoranda which they had submitted to us upon the filing of their Motion and Answer to the Debtor's Motion. The Debtor submitted a Brief on September 28, 1987, which was, by layman's standards, well-written, but, as might be expected, it did not contain any case citations or any indepth discussion of the Code provisions in issue. No Reply Briefs were filed. Consequently, we had the unfortunate task of doing most of the research necessary to resolve these Motions in a relatively novel factual setting ourselves.

## C. THE UNDERLYING FACTS

The parties, in part, attempted to rehash the domestic disputes between the Debtor and the Wife which have been brewing in the state courts since 1971. Two Master's Reports were admitted into evidence, the first of which was prepared in 1979 and served as the basis for the granting of a contested divorce to the Wife on December 18, 1979, and the second of which was prepared August 1, 1986, and related to a partition action instituted by the Wife against the Debtor on February 17, 1982. Both of these reports paint a totally unsavory picture of the Debtor as a domestic tyrant who frequently demanded sex from, yet almost as frequently beat, the Wife; took all or most of the Wife's paychecks and deposited same in his exclusive accounts; made the Wife sleep in a spare room on the floor when he became dissatisfied with her; forced the Wife from the marital home on May 21, 1971, in which he has continued to reside; and wasted the premises subsequent to the filing of the partition, for no apparent reason other than to spite the Wife.

On April 7, 1982, Judge Cipriani entered an injunction in the partition action enjoining and restraining (1) the Debtor, "from disposing of or assigning funds now in savings or investments;" and (2) the City Employees Federal Credit Union, with which he had an account, from permitting the Debtor to make any withdrawals. Ap-

parently unwilling to accept this Order, not only did the Debtor unsuccessfully appeal it, but he also admittedly withdrew funds from the Credit Union anyway, apparently making numerous small withdrawals to conceal detection of his actions. When the withdrawals were discovered in 1986, the Credit Union, recognizing its culpable role in allowing any withdrawals, paid $2,389.89, apparently equal to the funds removed after April 7, 1982, into the family court and charged back the Debtor for this amount. It is this deposit of $2,389.69 which the Debtor seeks, in his Motion, to have turned over to the Chapter 13 Trustee to assist in funding his Plan.

It is upon this rather disturbing factual background that the Movant's Motion to Dismiss, which we shall consider first, is founded.

## D. THE MOTION TO DISMISS, EXCEPT FOR CONTINUING OUR AUGUST 4, 1987, ORDER SHALL BE DENIED

As grounds for dismissal, the Movants allege the following specific grounds:

1. This case is repetitive of the Debtor's earlier filing, which he dismissed voluntarily without remitting a single payment.

2. The Debtor has failed to make payments in this case, as in the last case. The Debtor had remitted a February, 1987, $320.00 Plan payment, but none thereafter until our Order of August 4, 1987.

3. The Debtor refused to list the Movants as creditors in his Schedules, despite his obvious awareness of their presence and claims against them.

4. The Debtor listed Expenditures in the Budget of his Chapter 13 Statement which were not in fact being spent for the items listed.

5. The Debtor engaged in fraudulent and oppressive conduct towards the Wife, as described above, and has effectively transferred such conduct to all who would assist her, including P & B and the entire state court system.

We believe that none of these asserted grounds could possibly be, on the record here, in themselves sufficient to justify dis-missal on any of the bases set forth or suggested by 11 U.S.C. § 1307(c), which is the sole statutory provision upon which such a motion could be founded.

■ The first ground, repetitive filing, is a subject which we recently addressed in *In re Samuel,* 77 B.R. 520 (Bankr.E.D.Pa. 1987). In that case, we held that a series of four filings by the same debtor over a period of four years, where the facts did not fit within those contemplated by the statutory provision prohibiting repetitive filings in certain instances, 11 U.S.C. § 109(g), did not constitute a sufficient ground for dismissal on the basis of 11 U.S.C. § 1307(c)(1) or any other conceivably applicable Code provision. Here, two filings, similarly not impermissible under the terms of § 109(g), could hence clearly not be deemed a ground for dismissal of the case.

■ The second ground, failure to make payments, was dealt with in our Order of August 4, 1987, which we shall continue in effect. We believe that we cannot and should not do more than put the Debtor decidedly "under the gun" to suffer dismissal if he misses any future payments.

■ The third ground, refusal to list the Movants as creditors, represents apparently unreasonable stubbornness on the part of the Debtor, but is hardly an act which is prejudicial to the Movants. Clearly, they can file Proofs of Claim at this point and for some time hereafter, because the meeting required by 11 U.S.C. § 341(a) has not yet been scheduled, and Proofs can be filed "within 90 days after the first date set" for the § 341(a) meeting. Bankruptcy Rule 3002(c). Therefore, this dereliction on the part of the Debtor is, in our view, insufficient to merit dismissal.

■ The Movants also can avoid prejudice to their interests from the fourth ground, inaccurate listing of Expenditures, by invocation of a particular Code provision, in this case 11 U.S.C. § 1325(b)(1)(B), in raising Objections to Confirmation of the Debtor's Plan. If the Debtor is not actually spending his income of about $1,250.00 monthly as an employee of the City of

Philadelphia Water Department for the expenditures listed, he may be obliged to pay more of his projected disposable income to the Trustee to effect a confirmable Plan. *See In re Crompton,* 73 B.R. 800, 807–09 (Bankr.E.D.Pa.1987); and *In re Fries,* 68 B.R. 676, 682–85 (Bankr.E.D.Pa.1986).

 The final ground, the Debtor's past wrongful conduct, represents exactly the sort of "moralizing" over a debtor's prepetition conduct which we held, in *In re Gathright,* 67 B.R. 384, 387 (Bankr.E.D.Pa. 1986), *appeal dismissed,* 71 B.R. 343 (E.D. Pa.1987), "has little place in a bankruptcy court and no place in a determination as to whether a Chapter 13 plan may be confirmed." *See also In re Johnson–Allen,* 69 B.R. 461, 464–65 (Bankr.E.D.Pa.1987) (restitution for criminal action dischargeable in Chapter 13 cases). While we concede that application of the principle established therein to the Debtor here is unappealing, we nevertheless adhere to our holdings in *Gathright* and *Johnson-Allen.*

 Having determined that none of the grounds invoked by the Movants are in themselves sufficient to justify dismissal, we nevertheless must consider whether their cumulative effect can be considered to constitute such lack of "good faith" as to justify dismissal.

The rejection of such reasoning was most forcefully expressed by Chief Judge Twardowski in *In re Flick,* 14 B.R. 912, 916 (Bankr.E.D.Pa.1981), where he states that "there is no requirement that the petition be *filed* in good faith … there appears only a requirement that the *plan* be *proposed* in good faith." [1] *See also Samuel, supra.* Similarly, in *In re Smith,* 77 B.R. 496, 500–01, (Bankr.E.D.Pa.1987); and *In re Clinton Centrifuge, Inc.,* 72 B.R. 900, 903–08 (Bankr.E.D.Pa.1987), both judges sitting in this station of our court have joined the reasoning of Chief Judge Twardowski in *Flick* by relegating the concept of "good

faith" justifying dismissal of a Chapter 11 case to a narrow concept. Therefore, we see no basis to utilize the concept of good faith as a basis for the drastic measure of dismissal of the Debtor's case here.

We again emphasize that 11 U.S.C. § 1307(c) is the only statutory basis which a creditor can evoke to attempt to obtain dismissal of a case. The only one of the five grounds alleged by the Movants here which correlates directly with any of the express provisions of that Code section is the second ground, which has a specific referrant in § 1307(c)(4). Thus, we acted upon this ground, and will dismiss the case if the Debtor does not make future payments in compliance with our Orders. While certain persistently stubborn conduct which evinces a refusal to comply with specific Code provisions or our Orders could constitute "unreasonable delay," per § 1307(c)(1), or other "cause," set forth in § 1307(c), we do not *yet* perceive such a significant constellation of conduct by the Debtor contrary to Code provisions or our Orders as to justify our raising our hand to strike the Debtor's case entirely at this stage. We emphasize the word "yet" because the Debtor has displayed a streak of malicious stubbornness which may at some point lead us to act differently, and nothing we have said here should be construed as giving the Debtor any sort of license to proceed contrary to either the Code's or our own directives.

With this caveat and the continuation of the requirement, set forth in our Order of August 4, 1987, that the Debtor must cure his arrearages and maintain his current payments to the Trustee, in place, we shall proceed to otherwise deny the Motion to Dismiss. As we noted in *Johnson-Allen, supra,* "[t]he supervision of the bankruptcy court over the remittance of plan payments may, in practical terms, result in

---

1. The Movants' citation to *In re Rice,* 72 B.R. 311 (D.Del.1987), indicates that they fail to appreciate the distinction made by Chief Judge Twardowski in *Flick. Rice* involved a refusal to confirm a Plan due to lack of good faith of the Debtor in proposing a Plan. We further note that, in *Gathright,* we indicated that the issue of whether a debtor's Plan is proposed in good faith, which does, unlike the purported "good faith" requirement for filing, indeed draw support from the Code, 11 U.S.C. § 1325(a)(3), should be construed narrowly. 67 B.R. at 387–88.

more significant payments to crime victims than they might otherwise realize." 69 B.R. at 468–69. So here, the supervision of our court over the Debtor's finances, as already exemplified in our Order of August 4, 1987, may result in more significant payments to the Movants than they would otherwise realize through use of the state family court system.

## E. THE DEBTOR'S TURNOVER MOTION SHALL ALSO BE DENIED

We now turn our attention to the turnover Motion of the Debtor. Of initial concern is the often unhappy marriage of principles of domestic relations law with those of bankruptcy law.

At the outset, we note the supremacy of bankruptcy law where the two collide. One particular area of collision concerns the impact of the automatic stay. It is clear to us that the automatic stay applies to any domestic relations matters which impacts upon a debtor's financial condition or property. Thus, matters involving distribution of marital assets perforce must be subject to the automatic stay. *See, e.g., In re Schock,* 37 B.R. 399, 400–01 (Bankr. D.N.D.1984); *In re Kaylor,* 25 B.R. 394, 396 (Bankr.M.D.Fla.1982); *In re Moore,* 22 B.R. 200, 201–02 (Bankr.M.D.Fla.1982); and *In re Cunningham,* 9 B.R. 70, 71 (Bankr.D.N.M.1981). Also subject to the stay are matters involving even non-dischargeable financial obligations, such as support and alimony. *See* 11 U.S.C. § 362(b)(2) (stay does not apply to only such actions which seek collection from property that is *not* property of the debtor's estate); *In re United Church of the Ministers of God,* 74 B.R. 271, 277 n. 4 (Bankr.E.D.Pa.1987); and *In re Mack,* 46 B.R. 652, 657 n. 7 (Bankr.E.D.Pa.1985) (per GOLDHABER, CH. J.). The automatic stay is therefore a factor in our considerations regarding the disposition of the funds

on deposit with the court which the Debtor seeks to have turned over to him.[2] It is, of course, possible to move this Court for relief from the automatic stay, although success will ultimately depend on whether the moving party can convince us that the balance of the hardships tips in its favor. *See In re Cherry, Dock C–Food, Ltd. v. Cherry,* 78 B.R. 65, 72–74 (Bankr.E.D.Pa. 1987).

However, this is not to say that the filing of a bankruptcy unravels all elements of a domestic-relations proceeding. Certain aspects of domestic-relations matters, such as the dissolution of the marital relationship itself through divorce or child custody proceedings, which do not bear on a debtor's economic status, are not stayed by a bankruptcy. *See Schock, supra; Kaylor, supra; In re Schulze,* 15 B.R. 106, 108 (Bankr.S.D.Ohio 1981); *Cunningham, supra;* and H.R.REP. 595, 95th Cong., 1st Sess. 343–44 (1977).

Furthermore, the bankruptcy court will not review state court property-distribution determinations as some sort of super-appellate court. *See In re Howard,* 27 B.R. 894, 895–96 (Bankr.W.D.Ky.1983); *In re Halub,* 25 B.R. 617, 619 (Bankr.C.D.Cal.1982); and *In re Moore,* 5 B.R. 67, 68–69 (Bankr.N.D. Tex.1980).

We next must consider the principal point argued by the Wife, P & B, and Judge Cipriani in opposing the Debtor's turnover Motion, i.e., that the funds in issue are not property of the Debtor's estate. This argument must be considered in light of the broad language of 11 U.S.C. § 541(a), as interpreted in the unanimous decision of the United States Supreme Court in *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204–05, 103 S.Ct. 2309,

---

**2.** The main authority cited by counsel for Judge Cipriani, another decision of Judge Goldhaber, *In re Johnson,* 51 B.R. 439 (E.D.Pa.1985), is inapposite. Although the court there bolsters its result with the statement that bankruptcy courts should avoid incursions into family law matters, *id.* at 443, the decision that the automatic stay does not apply there rests solely on the determi-

nation that, the debtor's plan having been already confirmed, the property in issue was removed from the debtor's estate by operation of § 1327. *But see In re Clark,* 71 B.R. 747 (Bankr. E.D.Pa.1987). (We declined to follow *Johnson* and held that confirmation does not alter status of property of the estate).

2313–14, 76 L.Ed.2d 515 (1983), where the Court stated as follows:

> § 541(a)(1) provides that the "estate is comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1976 ed, Supp v). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(1)'s scope is broad. Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. *See* H.R. Rep No. 95–595, p 367 (1977) (footnotes omitted).

In *Whiting Pools*, moreover, the property of the debtor concerning which turnover was sought had been successfully seized by the Internal Revenue Service (hereinafter referred to as "IRS") in a pre-petition levy on a tax lien. The Court nevertheless held that not only were the items seized "property of the estate" of the debtor, but that the turnover of the property could be directed.

We adopted the same broad reading of § 541(a) in *In re Mason*, 69 B.R. 876, 882–84 (Bankr.E.D.Pa.1987), wherein we held that rentals deposited by a tenant into "escrow" in a bank account pending a landlord-tenant appeal were property of the tenant's estate, and recoverable by the tenant as a preferential transfer under 11 U.S.C. § 547(b). In that decision, *id.* at 883, we cited to unreported Orders in cases decided by Chief Judge Twardowski directing that such escrows could be recovered by tenants pursuant to 11 U.S.C. § 542(a). *In re Savaki*, Bankr. No. 85–02651T (Bankr.E.D.Pa. March 4, 1986); and *In re Snyder*, Bankr. No. 83–04084T (Bankr.E.D.Pa. March 8, 1985), *aff'd*, C.A. No. 85–2605 (E.D.Pa. Nov. 27, 1985). *See also In re Missionary Baptist Foundation of America, Inc.*, 792 F.2d 502 (5th Cir.1986); *In re Haynes*, 35 B.R. 32 (Bankr.M.D.Tenn. 1983); *In re Turner*, 29 B.R. 628 (Bankr.D. Me.1983); and *In re Heckler Land Dev. Corp.*, 15 B.R. 856 (Bankr.E.D.Pa.1981). *But see Creative Data Forms, Inc. v. Pennsylvania Minority Business Dev. Authority*, 800 F.2d 1132 (3d Cir.1986), *aff'g*, 72 B.R. 619 (E.D.Pa.1985); *In re Newcomb*, 744 F.2d 621 (8th Cir.1984); and *In re Coco*, 67 B.R. 365 (Bankr.S.D.N.Y.1986).

■ Given this broad reading of the term "property of the estate," we hold that these funds, which were only provisionally taken from the Debtor's account pending a final state court partition decree, are property of the Debtor's estate. However, although we agree with the Debtor that the funds in issue are property of his estate and the fact that this matter arises in a domestic relations setting does not alter this result, there is one additional hurdle which the Debtor must clear to allow us to grant his Motion. At this hurdle, he tumbles.

The Debtor, with considerable acumen, invokes the following Code provisions to support his Motion for turnover:

> Sec. 1303. Rights and powers of debtor.
>
> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(e), 363(f), and 363(1), of this title.
>
> Sec. 542. Turnover of property to the estate.
>
> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

However, with a layman's lack of comprehension of important details, the Debtor makes no mention of the Code section to which both of the above provisions refer, i.e., 11 U.S.C. § 363, and particularly § 363(e) thereof, which thusly establishes an important limitation on the Debtor's power to "use, sell or lease" property of the estate:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property use, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The Debtor thus overlooks one of the important conditions limiting his right to invoke § 542(a), i.e., the requirement that he "adequately protect" the rights of the party whose rights would otherwise be adversely affected by the turnover. Thus, in *Whiting Pools,* the turnover of property of the debtor's estate by the IRS was conditioned upon the adequate protection of the IRS' interests by the debtor. 462 U.S. at 201 & n. 7, 211–12, 103 S.Ct. at 2311 & n. 7, 2316–17.

Determining what sort of protection is adequate requires an analysis of the competing rights to the property, in this case the competing rights of the Movants and the Debtor in the $2,389.89 which Judge Cipriani, or, more properly, the family court's administrative office, holds as a stakeholder.

The funds in issue, though "property of the estate" of the Debtor, being the fruits of jointly-owned property of which he, arguably wrongly, deprived the Wife entirely, are at least partially her property, too. Moreover, these particular funds were seized from the Debtor's credit union after he violated the terms of an order preventing him from disposing of these funds pending the disposition of the partition action. This Order, confirmed only after an adversarial hearing and hence totally consistent with the Debtor's due process rights, undoubtedly gave the Movants some special interest or protection that the funds would be available to satisfy a court Order which would very likely result in a disposition that these funds be paid to parties other than the Debtor. This is protection which the Debtor's conduct, in withdrawing the funds, revealed was totally warranted.

It is clear that, where the creditor holds a contractual security interest, a turnover may result only when the secured party's rights are adequately protected by the debtor. *Compare In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 252–53 (Bankr.D.Conn.1985); *In re Starnes,* 44 B.R. 1020 (Bankr.E.D.Pa.1984) (per GOLDHABER, CH. J.); *In re Attinello,* 38 B.R. 609, 612 (Bankr.E.D.Pa.1984) (per TWARDOWSKI, J.); and *In re Radden,* 35 B.R. 821, 825–27 (Bankr.E.D.Va. 1983) (property turned over where protection found adequate); *with In re· Senlick,* 59 B.R. 296 (Bankr.E.D.Pa.1986) (per GOLDHABER, CH.J.); *In re Barton,* 58 B.R. 468, 470–72 (Bankr.D.S.D.1986); and *In re Loof,* 41 B.R. 855 (Bankr.E.D.Pa. 1984) (per GOLDHABER, CH. J.) (property not turned over where protection found inadequate).

While the special interest of the Movants in the funds here may not be the exact equivalent of a contractual security interest, it is very closely analogous to and may even be stronger than that of such a security interest. In fact, the Wife, as part-owner of the property to be partitioned, including the funds, appears to have a greater interest in the funds than the Debtor's estate. *Compare United States v. Norton,* 717 F.2d 767 (3d Cir.1983) (priority interest of IRS entitled to adequate protection); *Brooks Shoe Mfg. Co. v. United Telephone Co.,* 39 B.R. 980, 983–84 (E.D. Pa.1984) (utility security deposit creates a possessory security interest which allows the deposit to be applied to future services); *In re New York City Shoes, Inc.,* 78 B.R. 426, 430, 431 slip op. at 10, 14 (Bankr. E.D.Pa. Oct. 5, 1987) (quasi-security interest acquired by bank through setoff is entitled to adequate protection); and *Senlick, supra* (landlord's possessory interest in tenant's property entitled to adequate protection).

The concept of adequate protection has been applied directly to the domestic-relations area in two recent Memoranda issued by Judge Fox of this Court in *In re Bunkley,* Bankr. No. 86–04800F (Bankr.E.D.Pa. Sept. 1, 1987), and (Bankr.E.D.Pa. June 22, 1987); and *In re McCray,* 62 B.R. 11

(Bankr.D.Colo.1986). In the first *Bunkley* Memorandum, the husband-debtor who, like the Debtor here, conveniently "forgot" (in that case all the way through confirmation of his Plan) to list his ex-wife as a creditor, was permitted to defend against a motion for relief from the automatic stay filed by the ex-wife on the condition that he specifically provide for payment of the fair market value of the ex-wife's interest in the premises to her in his Plan. In the second Memorandum, relief was granted when the Debtor missed payments, even under a claim of disabling illness. In *McCray*, the court held that adequate protection was not, and could not be, provided for deferral of nondischargeable child-support payments.

·The obligations of the Debtor to the Movants, quasi-secured by the deposit of the funds with the family court, were admittedly not non-dischargeable. However, when questioned specifically by this Court as to what protection he proposed to provide to the Movants if the funds were turned over, the Debtor stated merely that he would be "more than happy to pay the money back" if the court would allow him the immediate right to remove the funds. Assuming *arguendo* the truth of these statements, which is doubtful in light of the Debtor's vigorous efforts to avoid paying anything to the Wife under any circumstances, this empty statement is by no means adequate protection, given the Wife's considerable interest in these funds. This is especially underscored when one observes that the Debtor's Plan contemplates total payments of $19,200.00 and priority, administrative, and security claims approach $18,000.00, leaving the Movants to scramble for a small pay-out with the Debtor's other unsecured claimants.

In sum, the Debtor falls far short of satisfying the requirement of § 363(e) that he provide adequate protection to the Movants, which is a most important pre-condition for his successful invocation of §§ 1303 and 542(a). Hence, the Debtor's turnover Motion must be denied.

## F. CONCLUSION

In closing, we note two principles from our discussion of the interplay between domestic relations and bankruptcy law at page 430 *supra*. First, we cannot and will not review the state-court property-settlement determinations which are finalized by court Orders, as the Debtor, invoking some purportedly higher form of due process of law, occasionally appeared to ask us to do. Secondly, we reiterate that the automatic stay prevents the Movants from proceeding with the partition action in the family court, at least unless and until they obtain relief from the automatic stay. This leaves the parties in an uneasy stalemate, with the funds in issue in the status of an "administrative freeze" for perhaps as long as five years. *Compare New York City Shoes, supra,* 78 B.R. at 432.

It is of course also possible that the Debtor will not make payments per our Order and the case will be dismissed, thus eliminating the automatic stay. The Debtor also is obliged to prepare a confirmable Plan, and the Movants will doubtless be vigilant in assessing whether he will do so; object if he does not; and if he cannot do so within a reasonable time, may succeed in having his case dismissed on this basis. *See* 11 U.S.C. §§ 1307(c)(1),(3), (5).

We are also concerned because of the Trustee's statement, in the course of the hearing, that no § 341(a) meeting has ever been scheduled in this case, due to the Debtor's filing of his Schedules several days after the filing of his Petition. We note that no meeting has yet been scheduled to date. Such delay, which benefits no party, cannot be tolerated. We shall therefore add to our accompanying Order denying the parties' respective Motions, a directive to the Standing Chapter 13 Trustee to schedule the Debtor's § 341(a) meeting within thirty (30) days from the date of this Order.