In re Jay David **SIMPSON**, Debtor.

**Bankruptcy No. 91–16480S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

June 3, 1992.

---

Howard Gershman, Plymouth Meeting Executive Campus, Plymouth Meeting, Pa., for debtor.

David S. Hope, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for movant.

Mitchell W. Miller, Philadelphia, Pa., Trustee.

Edward J. DiDonato, Ciardi, Fishbone & DiDonato, Philadelphia, Pa., for Trustee.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

The estranged wife of JAY DAVID SIMPSON ("the Debtor"), RONNI LINDA SIRAMARCO SIMPSON ("the Wife"), seeks relief from the automatic stay to pursue apparently all aspects of her counterclaim for a fault divorce, alimony, special injunctive relief, equitable distribution, "and other economic claims" in an action in divorce ("the Action") originally instituted in April, 1991, by the Debtor against the Wife in the Court of Common Pleas of Montgomery County, Pennsylvania ("the CCP"). In the petition for special injunctive relief, the Movant requests exclusive possession of the former marital home of the parties, alleging that the Debtor would cause emotional harm to the Movant and to her (their?) daughter if he moved into the home from his present separate residence; and that the Debtor be enjoined from interfering with the Movant's livelihood from

her operation of a ticket agency, known as "A–Ticket–Jar" ("ATJ"), the ownership of which is apparently in dispute.

The matter was presented to this court on Briefs and a Stipulation of Facts. The allegations of the·Stipulation, apart from recitation of admitted pleading of the procedural history, are that the Movant would have testified as follows:

1. [She] intends to seek a fault divorce ... before the [CCP] because Debtor has declined to consent to a consensual divorce.

2. [Her] marital interest in, and property distribution issues in regard to, the ticket agencies she and Debtor operated need to be determined expeditiously to enable her to obtain business financing and preserve her business.

3. [She] believes that her marital and property distribution issues, as well as her fault divorce case should be determined by the [CCP] because of the convenience of that forum and its experience and resources in dealing with such issues.

In addition, the parties acknowledged that

D. ... Debtor and/or Trustee, if he testified, would deny various allegations in the pleadings filed in the Divorce Case....

E. ... they have no opposition to the divorce portion of the Divorce Case being heard in the [CCP] and to relief from the automatic stay, if necessary, being granted for that purpose, but that Trustee objects to property distribution and marital interest issues being determined by any court other than this Court.

■■■ This court stated, in *In re Ford,* 78 B.R. 729, 734 (Bankr.E.D.Pa.1987), that [c]ertain aspects of domestic-relations matters, such as the dissolution of the marital relationship itself through divorce or child custody proceedings, which do not bear on a debtor's economic status, are not stayed by a bankruptcy. *See [In re] Schock,* ... [37 B.R. 399 (Bankr. D.N.D.1984)]; *[In re] Kaylor,* ... [25 B.R. 394 (Bankr.M.D.Fla.1982)]; *In re Schulze,* 15 B.R. 106, 108 (Bankr.

S.D.Ohio 1981); *[In re] Cunningham,* ... [9 B.R. 70 (Bankr.D.N.M.1981)]; and H.R.REP. 595, 95th Cong., 1st Sess. 343–44 (1977).

We would amend our statement in *Ford,* in light of an apt criticism appearing in Comment, *The Use of Abstention and the Automatic Stay to Allow State Courts to Decide Domestic Relations Matters,* 6 BANKR.DEV.L.J. 371, 378 (1989). In fact, *all* proceedings not within the scope of 11 U.S.C. § 362(b) are stayed by 11 U.S.C. § 362(a), including divorce and custody proceedings. However, relief should be freely given as to such matters, since they usually impinge upon the Debtor's economic affairs to only a relatively slight degree.

■■■ The parties apparently agree that the divorce aspects of the Action should go forward. The issue of the parties' marital relationship is a matter of particular state interest, which the state court has superior expertise in resolving. Moreover, it is important that this issue precede the equitable distribution issues because a request for equitable distribution of marital property of the parties cannot proceed unless and until the parties are divorced, or the issues of divorce and distribution are bifurcated, after careful analysis. *See, e.g., In re Bryan,* Bankr. No. 90–12503S, Adv. No. 90–0650S, 1990 WL 369448 (Bankr.E.D.Pa. Nov. 21, 1990); *In re Garafolo,* Bankr. No. 88–12027F, slip op. at 2 n. 2 (Bankr.E.D.Pa. March 21, 1990); *Drumheller v. Marcello,* 516 Pa. 428, 432, 532 A.2d 807, 809 (1987); *Verdile v. Verdile,* 370 Pa.Super. 475, 479, 536 A.2d 1364, 1366 (1988); *Campbell v. Campbell,* 357 Pa.Super. 483, 488, 516 A.2d 363, 366 (1986), *allocatur denied,* 515 Pa. 598, 528 A.2d 955 (1987); *Laxton v. Laxton,* 345 Pa.Super. 450, 455, 498 A.2d 909, 912 (1985); and *Dech v. Dech,* 342 Pa.Super. 17, 22, 492 A.2d 41, 43 (1985). The decision to bifurcate should also be made by the state courts, after carefully weighing the advantages and disadvantages of doing so. *See Wolk v. Wolk,* 318 Pa.Super. 311, 317–18, 464 A.2d 1359, 1362 (1983).

■■■ In determining what other portions of the CCP Case can go forward, we ad-

**860**

here to our statements, in *In re Ziets,* 79 B.R. 222, 224 (Bankr.E.D.Pa.1987), *aff'd,* C.A. No. 87–7756 (E.D.Pa. Feb. 29, 1988), that the Movant has the burden of proving *prima facie* cause for same before relief will be granted pursuant to 11 U.S.C. § 362(d), and that relief under § 362(d)(1) requires a showing by the Movant that the "balance of hardships" tips in her favor. *Accord, In re Causa,* 93 B.R. 409, 411 (Bankr.E.D.Pa.1988) (TWARDOWSKI, CH. J.); and *In re Wilson,* 85 B.R. 722, 728 (Bankr.E.D.Pa.1988) (FOX, J.).

As in *Ziets,* 79 B.R. at 223, we have little in the way of a record at our disposal which establishes specific relevant "hardships" of the parties. Unlike *Wilson,* 85 B.R. at 723, or even *Ziets,* 79 B.R. at 223, there has been no determination at any level in the state-court process on any aspect of this matter.

■ Nevertheless, we can rather safely conclude, even on this sparse record, that the balance of hardships tips in the Movant's favor as to the issues of alimony and her efforts to keep the Debtor out of the former marital home. This is not to say that there are no economic considerations relevant to these issues. Clearly there are, as there are in divorce or custody matters as well. However, the interests of the Movant in obtaining necessary support for, and emotional stability of, herself and the daughter, in our view, outweigh the relatively slight economic considerations. We will therefore grant partial relief to the Movant and allow those aspects of the Action to go forward.

■ At this point, we decline to go further. The record, being sparse, lacks any specific averments of imminent threats of the Debtor to prevent the Movant from operating and obtaining income from ATJ. Since the Debtor will be faced with the immediate prospect of augmenting the support to the Movant and the daughter if their income is inadequate, it is doubtful that he will attempt to cut off their income. In any event, at this point, we are unable to say that the hardships of the Movant outweigh the clear economic impact that re-

solving the ownership of this business would have on the administration of the Debtor's estate.

■ We are also unwilling to accord the Movant a *carte blanche* to try the parties' equitable distribution issues in the CCP at this stage. Providing a forum where distribution of a debtor's assets "can take place equitably under the auspices of the Bankruptcy Code ... is perhaps the most fundamental [concept] of all to bankruptcy court jurisdiction, ..." *In re United Church of the Ministers of God,* 74 B.R. 271, 275 (Bankr.E.D.Pa.1987). It may be that some resolution of the distribution issues with which the Trustee can live will come out of the state-court proceedings on the related issues of divorce, alimony, and possible injunctive relief. As noted at page 859 *supra,* dissolution of the parties' marriage or bifurcation must precede equitable distribution. Whether bifurcation occurs or not, the parties, under the supervision of the Trustee, who does not share the emotional charges of the parties, could conceivably begin the distribution process here, perhaps as efficiently and expeditiously as the state-court process. As we noted in *Ziets, supra,* 79 B.R. at 224, granting relief to the Movant would probably exclude the participation of other creditors, ably and actively represented by the Trustee here, from what could be a crucial aspect of the distribution process.

Our decision is, moreover, only a determination that the equitable distribution process should not be relegated to the state courts *at this juncture.* Future developments in the facts or rapid movement in the state court process could certainly merit a reconsideration of this aspect of our decision, just as oppressive actions of the Debtor in reference to the operation of ATJ could trigger a different response from this court.

For now, however, we will limit the relief to that designated in the accompanying Order.

### ORDER

AND NOW, this 3rd day of June, 1992, in reference to Motion of RONNI LINDA

SIRAMARCO SIMPSON ("the Wife") to obtain relief from the automatic stay ("the Motion"), it is hereby ORDERED as follows:

1. The Motion is GRANTED in part and DENIED in part.

2. The Movant is GRANTED relief from the automatic stay to pursue the issues of the dissolution of the marital status of her and JAY DAVID SIMPSON ("the Debtor"), alimony and support from the Debtor, and any injunctive relief necessary to protect the physical safety and well-being of the Movant and her daughter from the Debtor, in Civil Action No. 91–10382 ("the Action") in the Court of Common Pleas of Montgomery County, Pennsylvania.

3. However, the stay shall remain in effect as to all proceedings in the Action and elsewhere to effect distribution of the property of the Movant and the Debtor or to determine the rights of these parties in a ticket agency known as "A–Ticket–Jar."