**In re Leon PEMBERTON, Debtor.**

**Bankruptcy No. 92–12387S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 23, 1992.

**416**

Leslie Love Engle, Philadelphia, PA, for Darlene Gray.

Sharon Eckstein, Willig, Williams and Davidson, Philadelphia, PA, for debtor.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

Before this court is a motion brought by DARLENE GRAY ("Gray"), the ex-wife of LEON PEMBERTON ("the Debtor"), seeking relief from the automatic stay to file a motion seeking to reduce a support order in favor of the Debtor as a defense to the Debtor's attempts, in state domestic-relations court, to hold her in contempt for not complying with the outstanding support order. Despite our skepticism of the merits of Gray's efforts to reduce support to the Debtor, we will grant her motion, in limited fashion, due to the coalescence of two factors: (1) the substantial interest of the state and its courts in domestic relations matters, such as support, relative to this court; and (2) our perception that it is unfair for Gray to be subject to liability without an opportunity to raise a very typical defense.

### B. HISTORY OF THE CASE

The Debtor filed the underlying Chapter 13 bankruptcy case on April 17, 1992. His plan of reorganization was confirmed on September 17, 1992. The instant motion was filed, and allowed to be filed in forma pauperis, on November 23, 1992. Although the Debtor failed to file an answer to the motion, we allowed him to defend it at a hearing of December 17, 1992.

The Debtor and Gray have three children, presently aged 5, 9, and 12 years, of which they are both parents. The Debtor and Gray separated in May, 1990, and divorced in July, 1991. After the separation, the Debtor at all times retained primary custody of these three children, as well as three older children from a prior marriage. Of these older children, two are attending college and the other, aged 20, is disabled and apparently requires in-home care.

While they were married, Gray and the Debtor operated a business in which Gray baked cakes and the Debtor delivered them to customers. Gray also worked in a bakery, as a baker, where she met her present husband, Joseph Gray ("Joseph"). In October, 1991, Gray had a baby by Joseph and left her job in the bakery. She is now pregnant with their second child. Joseph testified that he injured his back at the bakery and presently receives workmen's compensation, which is allegedly the sole source of the family's income.

A support Order of July 10, 1991, obliges Gray to pay the Debtor $100 weekly, plus $5 on arrearages. However, she ceased making these (or any) payments in October, 1991.

The Debtor is, and at all times has been, gainfully employed. Three months ago he remarried. Although he could provide no hard evidence of same, he forcefully expressed a belief that the Grays continue to operate the cake-baking business. Joseph punctuated his denial of these allegations and his dissatisfaction with the Debtor's somewhat self-righteous indignation at Gray's perceived lack of responsibility by several verbal outbursts which resulted in his voluntary departure from the court room prior to the completion of the trial.

The Debtor has pursued Gray for her contempt of the $105 weekly support obligation in state domestic-relations court. On October 27, 1992, a state court judge ordered Gray to seek employment and to report on her thus-far unsuccessful job-search at a further hearing in January, 1993.

What brought the instant motion before us was Gray's effort to defend the contempt motion by filing her own motion to modify the support order in light of her recent childbirth and pregnancy. A state domestic relations court master, exhibiting unusual sensitivity to the effect of a bankruptcy, possibly because of a lack of sympathy with Gray's position, advised her that he would not proceed with her motion seeking modification in light of the presence of the automatic stay from the Debtor's bankruptcy case. She then filed the instant motion.

## C. DISCUSSION

We most recently addressed the elusive issue of the impact of a bankruptcy stay upon domestic relations proceedings in *In re Simpson*, 140 B.R. 857, 859-60 (Bankr. E.D.Pa.1992). The unusual facts of this matter present a good litmus for testing the principles set forth in *Simpson*.

Firstly, we held, in *Simpson*, that

*all* proceedings not within the scope of 11 U.S.C. § 362(b) are stayed by 11 U.S.C. § 362(a), including divorce and custody proceedings. However, relief should be freely given as to such matters, since they usually impinge upon the Debtor's economic affairs to only a relatively slight degree.

*Id.* at 859. *But see Carver v. Carver*, 954 F.2d 1573 (11th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 48, 121 L.Ed.2d 18 (1992) (bankruptcy court should abstain from hearing a motion seeking relief for contempt of the automatic stay arising in a domestic relations matter); and *In re Heflin*, 145 B.R. 560, 563–64 (Bankr.S.D.Ohio 1992) (Chapter 13 bankruptcy case found to have no effect on support).

Secondly, in determining whether relief should be granted in domestic relations matters which definitely do impinge upon a debtor's economic affairs, we stated that

we adhere to our statements, in *In re Ziets*, 79 B.R. 222, 224 (Bankr.E.D.Pa. 1987), *aff'd*, C.A. No. 87–7756 [1988 WL 220217] (E.D.Pa. Feb. 29, 1988), "that the Movant has the burden of proving *prima facie* cause for same before relief will be granted pursuant to 11 U.S.C. § 362(d), and that relief under § 362(d)(1) requires a showing by the Movant that the 'balance of hardships' tips in her favor."

*Accord, In re Causa*, 93 B.R. 409, 411 (Bankr.E.D.Pa.1988) (TWARDOWSKI, CH. J.); and *In re Wilson*, 85 B.R. 722, 728 (Bankr.E.D.Pa.1988) (FOX, J.).

*Simpson, supra*, 140 B.R. at 859–60.

We then allowed the *Simpson* movant-wife to go forward with state court proceedings seeking a divorce, alimony, and exclusion of the debtor from the marital home. *Id.* at 860. But we declined her request to allow an equitable distribution proceeding and an action to exclude the debtor from exercising any control over a jointly-owned ticket agency to go forward, at least at that juncture. *Id.*

■ Pursuant to the first principle set forth in *Simpson*, we concur with the domestic-court master's determination that the automatic stay applies to this proceeding. This issue is clouded by the fact that the plaintiff in the state-court proceeding is the Debtor, and typically the automatic stay only applies in proceedings in which a debtor is a defendant. *See Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir.1991). However, the stay generally would apply to counter-claims filed against the debtor in an action in which the debtor is plaintiff. *Id.* at 1204–05. It would typically not apply to mere motions filed against a plaintiff-debtor.

The motion to modify the support order in issue appears to be a separate action against the Debtor, or at least a counter-claim in response to his motion, not merely a motion arising in the same proceeding in which the Debtor is the plaintiff. We reach this conclusion because the state-

court judge went forward and heard the contempt proceeding in which the Debtor was the plaintiff and movant, while the motion seeking modification was relegated to a master and hence was not heard by the judge.

Thus, the stay applies. We therefore reach the difficult issue of balancing the hardships in the context of the facts of this case.

■ At trial, Gray attempted to establish that the balance of hardships tipped in her favor by asserting the merits of her motion to modify the support order. She claimed that the birth of her one child and the impending birth of another created a state-law *right* on her part to a modification. She attempted to portray a current state of economic deprivation of her and her husband, purportedly precluding her from remitting any support to the Debtor.

Gray also noted that the Debtor had presented and succeeded in confirming a plan which contemplated no support from her. She contended that the Debtor had eased his own considerable child-care burdens by his remarriage. Therefore, she argued that receipt of support form her was not essential to the Debtor's plan and resulted in little hardship to him.

We expressed to the parties, at the close of the trial, that we found that the relative equities between the parties lay very heavily in favor of the Debtor. Gray presented no reason why she could not continue to operate a cake-baking business out of her home. Joseph was available to care for the children if she chose to work outside of the home. Joseph's protestations that his back injury precluded his performance of child care were not totally convincing, as he related well to the baby and ambulated without great difficulty.

It is clear to us that Gray could, and probably does, generate income from baking and selling cakes which could be used to support her children by the Debtor as well as those by Joseph. Her choice to start a family so soon after remarriage appears driven, at least in part, by her attempt to avoid assistance to the Debtor.

The Debtor, meanwhile, is also struggling economically. His new wife, whose ability to generate income was not developed in the record, may in fact be just another economic dependent, joining the Debtor's disabled child, two children in college, and three youngsters who clearly need support. This is not an enviable economic burden to any person. The Debtor had a right to assume that support would, at least eventually, be paid to him by Gray.

Therefore, in one sense, the "balance of hardships" tips in favor of the Debtor. The merits of Gray's proposed motion to modify the support order appear, at least to this judge, weak.

However, there is another perspective to this matter which strongly influences our decision. While we have consistently precluded non-debtors from asserting counterclaims against debtors outside of the bankruptcy claims process, *see In re FRG, Inc.,* 121 B.R. 710, 714 (Bankr.E.D.Pa.1990); *In re TM Carlton House Partners, Ltd.,* 93 B.R. 859, 870 (Bankr.E.D.Pa.1988); and *In re International Endoscope Manufacturers, Inc.,* 79 B.R. 620, 621–22 (Bankr. E.D.Pa.1987), we have just as consistently allowed counterclaims to be asserted defensively against debtors in affirmative suits litigated by them, particularly if the counterclaims set forth plausible affirmative defenses or setoff claims, pursuant to 11 U.S.C. § 553(a) or applicable state law. *Carlton House, supra,* 93 B.R. at 870.

The reasons for this latter holding are simply notions of fair play. If a debtor is to be allowed to proceed affirmatively against a non-debtor, the latter should at least be able to defend, if not fight back.

What strikes us as decisive here is the inequity of the contrary result. If we deny the instant motion, the Debtor will be empowered to pursue Gray in contempt until his bankruptcy case ends, which could be over four years in the future. In the mean time, Gray would be stayed, over this period, from presenting the most typical and practical of defenses, *i.e.,* that her own changed circumstances justify a modification of the support order which she is alleged to have contumaciously violated.

This consideration, in our view, swings the "balance of hardships," as to this motion, in favor of Gray. Also, we note that we are allowing Gray to go forward with the knowledge that the apparently-skeptical domestic-relations court is quite likely to reach the same result as we would if this issue were ours to resolve, *i.e.*, that Gray is not entitled to a modification of the support order. However, Gray *is* entitled to her day in the appropriate court to litigate this issue.

## D.  CONCLUSION

For these reasons, the motion will be granted. However, we emphasize, in our order, that it is only the filing of the single, proposed motion to modify the support order as to which Gray is given relief from the bankruptcy stay to pursue. Other matters in the pertinent domestic-relations case between the parties are subject to, and remain subject to, the scope of the stay.

### ORDER

AND NOW, this 23rd day of December, 1992, after a contested hearing of December 17, 1992, it is

ORDERED AND DECREED that the Motion of Darlene Gray ("Gray") is GRANTED, and that the automatic stay under 11 U.S.C. § 362 is modified to allow Gray to proceed only with her proposed motion for modification of the child support order of the Family Court Division of the Court of Common Pleas of Philadelphia County, Case Number DR 90–05160.